JOHN MYRICK, Plaintiff in Error, v. NETTIE L. GRIFFIN, Defendant in Error.

200 So. 383
Division A
Opinion Filed February 14, 1941

*Ernest E. Mason,* for Plaintiff in Error;

*Coe & McLane,* for Defendant in Error.

BUFORD, J.—On writ of error we review judgment in favor of plaintiff for damages alleged to have been occasioned by the negligent operation of an automobile truck owned by plaintiff in error.

The accident occurred in the State of Alabama just west of Escambia County, Florida, on a bridge which crosses the Perdido River.

Plaintiff in error poses four questions for our consideration, as follows:

"Question No. 1. Where two motor vehicles are traveling in the same direction upon a narrow road, consisting of a series of bridges and fills, guarded by guard rails and barriers, where the bridges are narrower than the remainder of the roadway, and where there are numerous curves which obstruct the view of the driver of a rear vehicle, is it not the duty of the driver of the rear vehicle to exercise a greater degree of care in attempting to pass said forward vehicle than would be required of the driver of such rear vehicle under ordinary road conditions and circumstanmes, and was it not error on the part of the trial court to refuse to charge the jury to such effect upon request by the defendant, and should not a verdict for the plaintiff, under such circumstances, be set aside and a new trial granted?"

"Question No. 2. Where the plaintiff was riding as a guest of the driver of a rear vehicle which ran into a bridge abutment in attempting to pass a forward vehicle, and the evidence discloses that the driver of the rear vehicle in which the plaintiff was riding made several unsuccessful attempts to pass the forward vehicle on a narrow road consisting of bridges and fills guarded by guard rails, under such circumstances as would have caused a reasonably

prudent person riding as such guest to protest the manner of operation of such vehicle by the driver thereof, was not the plaintiff guilty of contributory negligence such as to bar her right of recovery against the owner of the forward vehicle by failing to protest against the manner of operation of the automobile in which she was riding, and did not the trial court err in refusing to charge the jury to such effect?"

"Question No. 3. Where the defendant files a special plea setting up the circumstances under which the driver of the automobile in which the plaintiff was riding as a guest attempted to pass the forward vehicle owned by the defendant, and which said plea was not a plea alleging contributory negligence on the part of the plaintiff, did not the trial Court err in charging the jury that the burden was upon the defendant to prove such plea by a preponderance of the evidence?"

"Question No. 4. Where the evidence discloses that the defendant's motor truck was being operated upon a narrow road consisting of numerous bridges and fills and upon which there were numerous curves, which said road was guarded by guard rails, does the law require that the driver of such motor truck keep his eyes glued on the rear-view mirror to see if anybody behind him desired to pass, and was it not the duty of the driver of the vehicle approaching from the rear desiring to pass such motor truck to be reasonably assured that it could pass such motor truck in safety, before attempting to pass the same, and did not the trial court err in charging the jury that it was the duty of the driver of defendant's motor truck, under such circumstances, to keep his eyes glued on such rear-view mirror, and that the defendant had no right to charge contributory negligence to the plaintiff under such circumstances?"

There are some conflicts in the evidence but there is ample evidence to support the finding of the following

stated conditions: That plaintiff in the court below was riding as a guest in the automobile with one Doolan who was driving his own car and over which plaintiff had no control. As Doolan approached the Perdido River and lowlands on the west side thereof the road consisted of a series of fills and bridges. The bridge across the main stream was a concrete bridge. On the road ahead of Doolan there was traveling the truck and trailer owned by the defendant; Doolan, approaching near the rear of this truck, blew his horn as a signal that he wished to pass; the truck failed to give way for passage. The second time Doolan blew his horn as a signal that he wished to pass and still the truck maintained a position on the highway which blocked the passage of Doolan. As both vehicles got near the west end of the concrete bridge Doolan so operated his horn as to produce a louder signal than he had theretofore given. Then the driver of the truck turned onto the right-hand side of the road, apparently giving Doolan room to pass, but as Doolan speeded up his automobile and was about to bring the front of his car even with the truck, the truck was caused to turn to the left, blocking passage, and thereby made it necessary for Doolan either to strike the truck or the end of the concrete bridge. Doolan struck the bridge and injured himself and the plaintiff. Plaintiff sued and recovered judgment which we now review.

We have considered the questions presented and our conclusion is that insofar as the refusal to give the charges constituting the basis of plaintiff in error's questions numbered 1, 2 and 3, the record shows that the principles of law embraced in the charges requested and refused had been adequately covered in the instructions given the jury and that there was no reversible error committed by the court in refusing to reiterate those principles in the language proposed by the defendant.

As to the fourth question, we do not find in the record any showing that the court instructed the jury in effect that the law requires the driver of a truck to keep his eyes glued on the rear-view mirror to see if anybody behind him desired to pass. If the driver of the automobile in which the plaintiff was riding was guilty of any contributory negligence there is no showing in the record which would warrant the court in finding or assuming that that negligence was participated in by the plaintiff or that she was responsible for such alleged negligence.

The accident occurred in the State of Alabama and, therefore, the law of the State of Alabama as construed by the Supreme Court of that State, is controlling. We, therefore, conclude that this case is ruled by opinion and judgment of the Alabama Court in the case of Buffalo Rock Co. v. Davis, 228 Ala. 603, 154 So. 556. There the Court said:

"Knowledge of the probability of danger prior to the alleged wrongful act is prerequisite to subsequent negligence and wantonness, but it is not necessary to primary negligence. In some instances no duty or care, the failure of which is negligence, arises without such notice (Southern Ry. Co. v. Dickson, 211 Ala. 481, 100 So. 665; 45 C. J. 1066); but it is then subsequent negligence.

"As respects the element of knowledge of the peril, there is no distinction in principle between subsequent negligence and willful or wanton wrong. Central of Ga. Ry. Co. v. Corbitt, 218 Ala. 410, 118 So. 755. But such notice of danger is not an element of primary negligence, for due care arises without notice of the danger, when certain relations exist which create the legal duty of ordinary care.

."The driver of defendant's car owed the plaintiff the duty to observe ordinary care not only after discovering her presence in the car, but also to anticipate the presence

of the plaintiff, or others, in the car, and also to anticipate the presence of another car in which plaintiff or others, such as plaintiff, might be passengers. Cooper v. Agee, *supra;* 48 C. J. 909; 2 R. C. L. 1184."

And further in that opinion it was said:

"The Act of 1927, p. 370, No. 55 (Michie's Code, No. 1397 [65]) provides that the driver before turning from a direct line in which he is traveling shall first see (meaning observe due care to see) that such movement can be made in safety. Those statutes limit the principle mentioned in the case of Morrison v. Clark, 196 Ala. 670, 676, 72 So. 305, and in the Ollinger case, *supra,* to a different effect.

"We think the meaning of Sections 58 (b) and 60, Acts 1927, pp. 370, 371 (Michie's Code Nos. 1397 [60] and 1397 [62]) is that, when a horn is sounded or other signal given with sufficient intensity, on a car following another, and the forward car 'gives way to the right,' the driver in the rear may be found by the jury to have the right to assume that his signal was heard, and that such movement was for the purpose of giving way in his favor, unless it appears to have been for some other purpose, as may be manifested by all the circumstances. We do not think that the rear driver is bound at his peril to know that the forward driver did hear the signal and was giving way for him, but that he may act on the reasonable appearances after he has given the statutory signal; nor is he justified absolutely in assuming that his signal is heard and acted on because the forward car moves to the right to some extent or for some purpose. But the result must be a reasonable conclusion from all the facts to be found by the jury."

We enunciated like principles in the case of Muse, *et al.,* v. Kaler Bros., Inc., *et al.,* 120 Fla. 221, 162 Sou. 507, wherein we said:

"Chapter 9156, Acts of 1923, makes it the duty of truck operators to so equip each truck with mirrors located in such position as to show the driver thereof the approach of faster moving vehicles about to overtake such truck from the rear while it is in operation. This statute is in recognition of the commonly known fact that trucks, being slow-moving vehicles, and being limited by law to a less rate of speed than passenger cars, are liable at any and all times to be overtaken and passed by faster moving automobiles, particularly passenger carrying automobiles, and therefore the effect of the statute is to impose on truck operators the duty of anticipating the approach from their rear and to enjoin on them the responsibility for avoiding collisions with their trucks when so overtaken, by holding their trucks to the right hand side of the road when being overtaken by automobiles that are in the act of passing such trucks when moving as a slower rate of speed on the highway than other traffic."

This enunciation we quoted with approval in the case of Scott v. Stone, 129 Fla. 784, 176 Sou. 852.

On perusal of the entire record we find no reversible error made to appear. So the judgment is affirmed.

So ordered.

BROWN, C. J., WHITFIELD and ADAMS, J. J., concur.