201 So.2d 743 (1967)
Mary S. HOPKINS, Individually and As Executrix of the Estate of George D. Hopkins, Deceased, Appellant,
v.
LOCKHEED AIRCRAFT CORPORATION, Appellee.
No. 35203.
Supreme Court of Florida.
February 1, 1967.
As Corrected July 12, 1967.
On Rehearing July 26, 1967.
*744 Henderson, Franklin, Starnes & Holt, Fort Myers, for appellant.
Macfarlane, Ferguson, Allison, Kelly & Himes, T. Paine Kelly, Jr., and David H. McClain, Tampa, for appellee.
ROBERTS, Justice.
This cause is before the court for determination of a question of law certified to us by the United States Court of Appeals for the Fifth Circuit pursuant to Rule 4.61, Florida Appellate Rules, 31 F.S.A. Hopkins v. Lockheed Aircraft Corporation, 358 F.2d 347, opinion and certificate filed March 24, 1966. The factual background against which the question certified is presented is succinctly stated in the appellate court's certificate, as follows:
"Plaintiff (appellant), a Florida citizen, prior to September 17, 1961, resided in Florida with the Deceased as man and wife. On September 17, 1961, the Deceased was a fare-paying passenger on an aircraft designed and manufactured by Lockheed (appellee), a California corporation doing business in Florida, and operated by Northwest Airlines, Inc., which crashed in Illinois, killing all persons aboard. The aircraft was on a regularly scheduled flight from Milwaukee, Wisconsin, to Tampa, Florida, via Chicago, Illinois. Deceased boarded the doomed aircraft in Chicago, after a stopover of several days, on the last leg of a round trip ticket he had purchased from Northwest in Tampa.
"After his death, probate was commenced in Lee County, Florida, and Plaintiff was appointed as Executrix of the estate of her deceased husband. Administration of this estate is still pending.
"Thereafter, Plaintiff filed separate actions against Northwest and Lockheed. The basis of the allegations in the suit against Northwest was negligent maintenance and operation of the aircraft, and the basis of the suit against Lockheed, the subject of this appeal, is negligent design and manufacture resulting in a breach of *745 implied warranty of fitness. The suit against Northwest was terminated by payment of $32,500 to Plaintiff in consideration for a covenant not to sue.
"The Illinois Wrongful Death Act, Ill. Ann. Stat. Ch. 70, Sections 1-2 (Smith-Hurd), provides an action for damages for wrongful death for accidents within the State of Illinois and contains a limitation of recoverable damages in the amount of $30,000.
"The Florida Wrongful Death Act, Fla. Stat. Ann. Section 768.01 et seq., contains no limitation on the damages recoverable for wrongful death."
The trial judge entered summary judgment for defendant Lockheed on the ground that the Illinois statutory limitation of damages was applicable to plaintiff's suit; that she had already recovered from the defendant Northwest Airlines more than the amount obtainable under the Illinois statute; and that a trial on the merits would, therefore, be moot. On appeal by the plaintiff, the sole question presented was whether the trial judge properly applied the Illinois limitation of damages. Finding no clear, controlling precedents in the decisions of this court determinative of the question, the appellate court has certified to this court for response the following question:
"Would the State Courts of Florida, for reasons of public policy or otherwise, refuse to apply the Illinois limitation of damages in the above situation, and if so, would any limitation of damages apply?"
In support of the contention that the first part of this question should be answered in the affirmative, counsel for plaintiff-appellant argues that this court has an opportunity to align itself with those courts which have discarded the ancient rule that the lex loci delicti is the sole arbiter of the substantive rights and liabilities of the parties in tort cases  the so-called place-of-wrong rule  and have adopted, in its stead, a more flexible rule or standard by which to solve conflict-of-law (or, more accurately, choice-of-law) problems which inevitably arise in a multi-state tort case  and particularly in the multi-state accident cases which are becoming more and more frequent in the fast-moving, travel-minded, age of today. And after careful consideration of the leading decisions, we are persuaded that they are based on impeccable and irresistible logic and reasoning. Accordingly, the first part of the question here certified is answered in the affirmative.
We note, first, that the reason for the court-adopted rule of lex loci delicti has, over the years, lost much if not all of its authenticity. An early case, Alexander v. Pennsylvania Co., 1891, 48 Ohio St. 623, 30 N.E. 69, stated the reason for the rule as follows:
"An act should be judged by the law of the jurisdiction where it was committed. The party acting or omitting to act must be presumed to have been guided by the law in force at the time and place, and to which he owed obedience. If his conduct, according to that law, violated no right of another, no cause of action arose, for actions at law are provided to redress violated rights."
The reason thus given is clearly inapposite in the case of an unintentional tort  especially one where, as in the instant case, the "place of wrong" was purely adventitious  mere "happenstance".
Another reason for the rule was stated by the New York Court of Appeals in Babcock v. Jackson, 1963, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279, 95 A.L.R. 2d 1, as follows:
"It had its conceptual foundation in the vested rights doctrine, namely, that a right to recover for a foreign tort owes its creation to the law of the jurisdiction where the injury occurred and depends *746 for its existence and extent solely on such law."
But, as pointed out by the New York court in that decision,
"[T]he vested rights doctrine has long since been discredited because it fails to take account of underlying policy considerations in evaluating the significance to be ascribed to the circumstance that an act had a foreign situs in determining the rights and liabilities which arise out of that act."
That policy considerations are a sine qua non to the exercise by a court of the judicial principle of comity, in assuming jurisdiction of a cause of action arising under the law of a foreign state or in recognizing a status created by the law or a judicial decision of a foreign state, has long been recognized in this jurisdiction. See Herron v. Passailaigue, 1926, 92 Fla. 818, 110 So. 539; Mott v. First National Bank of St. Petersburg, 1929, 98 Fla. 444, 124 So. 36; Hartford Accident & Indemnity Co. v. City of Thomasville, 1930, 100 Fla. 748, 130 So. 7; Beckwith v. Bailey, 1935, 119 Fla. 316, 161 So. 576; and Kellog-Citizens National Bank of Green Bay v. Felton, 1940, 145 Fla. 68, 199 So. 50. Accord: Tsilidis v. Pedakis, Fla.App. 1961, 132 So.2d 9; Allen v. Universal C.I.T. Credit Corp., Fla.App. 1961, 133 So.2d 442; Neal v. State ex rel. Neal, Fla.App. 1961, 135 So.2d 891.
This aspect of judicial comity  of which the rule of lex loci delicti in tort cases is necessarily a subservient part  was stated in the Hartford Accident & Indemnity Co. case, supra, 130 So. 7, 8, as follows: 
"The rule of judicial comity has reference to the principle in accordance with which the courts of one state or jurisdiction will give effect to the laws and judicial decisions of another state, not as a matter of obligation, but out of deference and respect. * * * While the statutes of one state have no force or effect in another state, courts of justice in one state will by the rule of comity assume jurisdiction of causes of action which are transitory in their nature and arise under the law of a foreign state. * * * The extent and scope to which the rule of comity will operate is not universal, but will be determined by each sovereignty under the controlling facts of the particular case. It does not require a court to enforce rights given by the statutes of another state to the prejudice of its own citizens, or when complete justice cannot be done, nor will the courts of one state enforce laws of another state which are repugnant to its own or to public policy." (Emphasis added.)
Similarly, in Beckwith v. Bailey, supra, 161 So. 576, 581, in considering whether an Idaho divorce decree should be recognized, under the rule of comity, as a defense to a suit for alienation of affections, this court noted that
"* * * it has not been made to appear by the proofs as a matter of law that the public policy, or any salutary interest, of the state of Florida requires the preservation of the pre-existing marital status of Harold O. Bailey with his wife * * *." (Emphasis added.)
An examination of the decisions relied upon by defendant-appellee in which this court has given lip service to the place-of-wrong rule reveals that there was, in fact, no claim of conflict between the law of this, the forum, state and the law of the place-of-wrong state. See Meyer v. Pitzele, Fla.App. 1960, 122 So.2d 228; Myrick v. Griffin, 1941, 146 Fla. 148, 200 So. 383. In Astor Electric Service v. Cabrera, Fla. 1952, 62 So.2d 759, the choice-of-law problem was as between the law of the domicile of the parties (Puerto Rico) and Florida, which was the forum as well as the place-of-wrong state. A similar situation existed in Young v. Viruet de Garcia, Fla.App. 1965, 172 So.2d 243. In Astor, we declined *747 to apply the community-property law of Puerto Rico to the issue of whether the negligence of the husband should be imputed to the plaintiff-wife because such law is contrary to the legislative policy of this state. In Young, it appears that there was, in fact, no conflict between Puerto Rican and Florida law on the ultimate issue of whether the plaintiff was entitled to bring the suit.
In view, then, of the frequently announced and strongly worded policy of this court to give primary consideration, in choice-of-law cases, to the public policy  legislative as well as organic  or "any salutary interest" of this state and to decline to enforce a foreign law when contrary thereto, we would have no difficulty in agreeing with the New York Court of Appeals' decision in Kilberg v. Northeast Airlines, 1961, 9 N.Y.2d 34, 211 N.Y.S.2d 133, 172 N.E.2d 526, that the place-of-wrong statutory limitation of damages for wrongful death should not be given effect in the forum state when such limitation is contrary to the long-established public policy of the forum state. Moreover, from what has been said before, we think it is clear that we can, consistently with our application of the judicial principle of comity in choice-of-law cases and without doing any real violence to the principle of stare decisis, take the one small logical step forward and hold squarely, as did the New York court in Babcock v. Jackson, 1963, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279, 95 A.L.R.2d 1, the Pennsylvania court in Griffith v. United Air Lines, Inc., 1964, 416 Pa. 1, 203 A.2d 796, the New Hampshire court in Johnson v. Johnson, N.H. 1966, 216 A.2d 781, and the Wisconsin court in Wilcox v. Wilcox, 1965, 26 Wis.2d 617, 133 N.W.2d 408, that the strict lex loci delicti rule should be abandoned in favor of a more flexible rule which permits analysis of the policies and interests underlying the particular issue before the court. That a more flexible rule should be adopted, generally, for determination of choice-of-law problems in tort cases has been indicated in recent comments by writers, see e.g., Comments on Babcock v. Jackson, 63 Colum.Law Rev. 1212 (1963); and in the new second Restatement of Conflict of Laws which (in Tentative Draft No. 9, Sec. 379(1), 1964) states the rule as follows: 
"The local law of the state which has the most significant relationship with the occurrence and with the parties determines their rights and liabilities in tort."
We note, also, that a recent decision of the Third District Court of Appeal of this state has indicated that the "significant contacts" or relationships of the forum state with the occurrence or parties should be taken into account in solving choice-of-law problems. See Confederation Life Association v. Ugalde, Fla.App. 1963, 151 So.2d 315. And cf. Sun Insurance Office, Ltd., v. Clay, Fla. 1961, 133 So.2d 735.
While the various commentators and the courts are not in complete agreement on the details of how the contacts and relationships of the parties and the occurrence to the respective states and their laws are to be evaluated, there appears to be complete agreement as to the importance of analyzing the policies underlying and the purpose of the conflicting laws and of the relationship of the occurrence and of the parties to such policies and purpose. By giving full effect to the law of a foreign state when  and only when  such purposes or policies would be served or effectuated, the forum state does, as a practical matter, accord due "deference and respect" to such foreign law  which is all that the rule of comity requires; and "judicial comity" in unintentional tort cases becomes a meaningful and useful part of our jurisprudence instead of "a blunt tool in the judicial process [which] frequently produced results that were not rationally supportable." Johnson v. Johnson, supra, 216 A.2d 781.
Applying these principles to the facts of the instant case, it is obvious that the purely *748 fortuitous circumstance that the plane happened to crash in Illinois does not give that state a controlling interest or concern in the amount to be awarded to a Florida resident, by a Florida court, from a California defendant, on account of the wrongful death of a Florida decedent. Accordingly, we hold that the state courts of Florida would refuse to apply the Illinois limitation of damages in the circumstances of this case.
Having disposed of the first question, we reach the second, viz., would any limitation of damages apply. Section 768.01, Florida Statutes, F.S.A., the Florida wrongful death law provides:
"(1) Whenever the death of any person in this state shall be caused by the wrongful act, negligence, carelessness or default of any individual or individuals, or by the wrongful act, negligence, careless or default of any corporation, * * *".
(Italics supplied)
It is noteworthy that the Florida statute applies only to deaths occurring in this state, and since the death involved here occurred outside the State of Florida, it would not alone support a cause of action on the facts involved in this case, and accordingly the plaintiff must look elsewhere for such support. However, for a direct answer to the second question, there is no statutory limit on damages for wrongful death in this state.
Summarizing, the State of Florida, for the reasons stated above, would refuse to apply the Illinois limitation of damages to the wrongful death action here sued upon, under the facts as stated in the certificate, and there is no statutory limitation in the State of Florida on the amount of damages for death by wrongful act, where such a cause of action exists in this state.
THORNAL, C.J., and O'CONNELL, CALDWELL and ERVIN, JJ., concur.
DREW, J., dissents with Opinion.
THOMAS, J., dissents and agrees with DREW, J.
DREW, Justice (dissenting):
Assuming the propriety of an implied warranty action in the circumstances of this case, an issue not encompassed by the certificate here, the action survives the death of the party only by virtue of statutory preservation under the law of the state where death occurred, in Illinois.[1]
The issue presented, i.e. the applicability of the damages limitation in the Illinois statute, should in my opinion be resolved by a determination of whether the limitation is so repugnant to the public policy in this state as to be unenforceable under principles of comity usually applied in the prosecution of causes of action transitory in nature. I am unable to find such an overriding collision with public policy simply because the statute governing actions for death occurring in this state contains no damage limitation.[2]
It seems to me that any extensive discussion of tort doctrines, such as the lex loci delicti or place-of-wrong rule, is inappropriate in connection with a proceeding explicitly *749 characterized as one based on warranty.[3] There are, however, obvious virtues, in consistency and stability, supporting the application of laws whenever possible, in a cohesive rather than piecemeal fashion. In other words, the applicability or inapplicability of foreign law should so far as possible be based on objective and stable standards. While the place at which an event occurs may indeed be fortuitous, that circumstance nevertheless seems to me of primary importance in determining the legal effect to be accorded any occurrence upon which a cause of action depends. A domiciliary or other forum in which a transitory action is brought may in these times be equally fortuitous.
I am not persuaded that this case presents any necessity or justification for abandonment of guiding principles in past decisions or for expression of broad rules better left to be established by the slower but more certain judicial method of case disposition.
I would, for reasons hereinabove stated, answer the initial question presented in the negative, the second inquiry then requiring no disposition.
THOMAS, J., concurs.

ON REHEARING GRANTED
DREW, Justice.
The inquiry in this case, on certificate[1] from the U.S. Court of Appeals, *750 5th Circuit, arises out of an action instituted in Florida for damages for the death of a Florida resident in an airline accident in Illinois. Plaintiff had recovered $32,500 *751 from the operating airline prior to the certification here by the Fifth Circuit Court, to which an appeal had been taken from a summary judgment for defendant Lockheed in a wrongful death action based on "negligent design and manufacture resulting in a breach of implied warrant of fitness." Judgment for defendant was entered on the ground that the Illinois wrongful death statute[2] relied on by plaintiff contained a provision limiting recoverable damages to $30,000 which plaintiff had already exceeded.
The question certified is:
"Would the State Courts of Florida, for reasons of public policy or otherwise, refuse to apply the Illinois limitation of damages in the above situation, and if so, would any limitation of damages apply?"
The first inquiry, in our opinion, necessarily implies the applicability of the Illinois statute conferring a right of action for wrongful death which did not exist under common law. A state court plainly could not refuse or permit application of a statutory damage limitation clause independent of the statute which it limits. In any event, we conclude that under ordinary rules of statutory construction the provisions of the statute are not severable.
Assuming the propriety of an implied warranty action in the circumstances of this case, an issue not encompassed by the certificate here, it is clear that the action survives the death of the party only by virtue of statutory preservation under the law of the state where death occurred, in Illinois. The issue presented, i.e., the applicability of the damage limitation in the Illinois statute, should be resolved by a determination of whether the limitation is so repugnant to the public policy in this state as to be unenforceable under principles of comity usually applied in the prosecution of causes of action transitory in nature. We are unable to find such an overriding collision with public policy simply because the statute governing actions for death occurring in this state contains no damage limitation.[3]
It may be that any extensive discussion of tort doctrines, such as the lex loci delicti or place-of-wrong rule, is inappropriate in connection with a proceeding explicitly characterized as one based on warranty.[4] To the extent, however, that the place of performance or breach of a warranty may control the action,[5] the law of *752 Illinois should govern in this case, and there are obvious virtues, in consistency and stability, supporting the application of laws whenever possible in a cohesive rather than piecemeal fashion. In other words, the applicability or inapplicability of foreign law should so far as possible be based on objective and stable standards. While the place at which an event occurs may indeed be fortuitous, that circumstance nevertheless seems to me of primary importance in determining the legal effect to be accorded any occurrence upon which a cause of action depends. A domiciliary or other forum in which a transitory action is brought may in these times be equally fortuitous.
We are not persuaded that this case presents any necessity or justification for abandonment of guiding principles in past decisions or for expression of broad rules better left to be established by the slower but more certain method of judicial case disposition.
For reasons hereinabove stated, we answer the initial question in the negative. The second inquiry then requires no disposition.
O'CONNELL, C.J., and THOMAS, J., concur.
THORNAL, J., concurs in opinion with opinion.
ROBERTS, J., dissents with opinion.
CALDWELL and ERVIN, JJ., dissent.
THORNAL, Justice (concurring in opinion).
I concur in the opinion and judgment on rehearing prepared by Mr. Justice Drew. In my initial consideration, I feel that I failed to recognize appropriate correlation between the right of action and limitation of damages. The Illinois statute gives the right of action but it is necessarily a right to an action subject to the limitations of the laws of that state.
ROBERTS, Justice (dissenting).
I respectfully dissent for the reasons stated in the original opinion of the court in this cause.
NOTES
[1] Ill. Ann. Stat., Ch. 70, Sees. 1-2 (Smith-Hurd). The Florida act clearly relates only to deaths "in this state" caused by wrongful act or default. F.S. Sec. 768.01(1), F.S.A.
[2] Cf. Kilberg v. Northeast Airlines, Inc., 1961, 9 N.Y.2d 34, 211 N.Y.S.2d 133, 172 N.E.2d 526, basing a contrary conclusion on an express constitutional provision in N.Y. that in actions of this class "the amount recoverable shall not be subject to any statutory limitation." N.Y. Const., Art. I, Sec. 16.
[3] For discussion of the nature of implied warranty actions in this jurisdiction see Carter v. Hector Supply Co., Fla. 1961, 128 So.2d 390.
[1] Rule 4.61, Fla.App. Rules 31 F.S.A. The certificate reads:
 IN THE
 United States Court of Appeals
 FOR THE FIFTH CIRCUIT
 -------------
 No. 22518
 -------------
 MARY S. HOPKINS, Individually and
 as Executrix of the Estate of
 GEORGE D. HOPKINS,
 Deceased,
 Appellant,
 versus
 LOCKHEED AIRCRAFT
 CORPORATION,
 Appellee.
 --------------

CERTIFICATE FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT TO THE SUPREME COURT OF FLORIDA, PURSUANT TO § 25.031, FLORIDA STATUTES 1959, AND RULE 4.61, FLORIDA APPELLATE RULES.
--------------
To the Supreme Court of Florida and the Honorable Justices thereof:
It appears to the United States Court of Appeals for the Fifth Circuit that there are involved in the above-styled case in said Court questions or propositions of the laws of the State of Florida which are determinative of the said cause, and that there are no clear, controlling precedents in the decisions of the Supreme Court of the State of Florida. The said United States Court of Appeals for the Fifth Circuit therefore certifies such questions or propositions of the laws of the State of Florida to the Supreme Court of Florida for instructions concerning such questions or propositions of State law, pursuant to § 25.031, Florida Statutes 1959, and Rule 4.61, Florida Appellate Rules, as follows:
(1) Style of the Case
The style of the case in which this certificate is made is as follows: MARY S. HOPKINS, individually and as Executrix of the Estate of George D. Hopkins, deceased, appellant versus LOCKHEED AIRCRAFT CORPORATION, appellee, case No. 22518, United States Court of Appeals for the Fifth Circuit, said case being an appeal from the United States District Court for the Middle District of Florida, Fort Myers Division.
(2) Statement of Facts
Plaintiff (appellant), a Florida citizen, prior to September 17, 1961, resided in Florida with the Deceased as man and wife. On September 17, 1961, the Deceased was a fare-paying passenger on an aircraft designed and manufactured by Lockheed (appellee), a California corporation doing business in Florida, and operated by Northwest Airlines, Inc., which crashed in Illinois, killing all persons aboard. The aircraft was on a regularly scheduled flight from Milwaukee, Wisconsin, to Tampa, Florida, via Chicago, Illinois. Deceased boarded the doomed aircraft in Chicago, after a stopover of several days, on the last leg of a round trip ticket he had purchased from Northwest in Tampa.
After his death, probate was commenced in Lee County, Florida, and Plaintiff was appointed as Executrix of the estate of her deceased husband. Administration of this estate is still pending.
Thereafter, Plaintiff filed separate actions against Northwest and Lockheed. The basis of the allegations in the suit against Northwest was negligent maintenance and operation of the aircraft, and the basis of the suit against Lockheed, the subject of this appeal, is negligent design and manufacture resulting in a breach of implied warranty of fitness. The suit against Northwest was terminated by payment of $32,500 to Plaintiff in consideration for a covenant not to sue.
The Illinois Wrongful Death Act, Ill. Ann. Stat. ch. 70, §§ 1-2 (Smith-Hurd), provides an action for damages for wrongful death for accidents within the State of Illinois and contains a limitation of recoverable damages in the amount of $30,000.
The Florida Wrongful Death Act, Fla. Stat. Ann. § 768.01 et seq., contains no limitation on the damages recoverable for wrongful death.
At the pre-trial conference, argument was held as to the governing law, and the District Judge orally ruled that Illinois law would apply except as to the limitation on damages which was contrary to the public policy of the State of Florida. Thereafter, the District Court entered its Pre-Trial Conference Order, and in Paragraph 4 thereof rescinded its former ruling and determined that the cause would be governed exclusively by Illinois law. [(R. 13).] On this premise the Motion for Summary Judgment filed by Defendant was properly granted at that stage of the record since Plaintiff had already received from NORTHWEST the maximum amount recoverable under Illinois law, and a trial on the merits would have been a moot question. (R. 22).
The question now before this Court does not involve the allegations on negligence, nor the theory of plaintiff's cause of action. Instead, the sole question presented by Plaintiff's appeal is whether the Federal District Court, Erie-bound to follow Florida's conflict-of-laws rule, properly held that the Illinois limitation of damages applies in this wrongful death action. We have been unable to find any Florida decision which is directly dispositive of this question. Neither party disputes, and for the purpose of this certification it should be assumed, that pursuant to the minimum-contacts rule Florida could constitutionally apply to this suit either the Illinois $30,000-damage limitation or its own Wrongful Death Act rule of unlimited damages. See Pearson v. Northeast Airlines, Inc., 2 Cir. (en banc), 1962, 309 F.2d 553. But Plaintiff insists that in light of Kilberg v. Northeast Airlines, Inc., 1961, 9 N.Y.2d 34, 172 N.E.2d 526, and Griffith v. United Airlines, Inc., 1964, 416, Pa. 1, 203 A.2d 796, including the writings of many commentators advocating the departure from the traditional doctrine of lex loci delictus in this situation, the Florida courts would decline to apply the Illinois limitation as contrary to the public policy of the State of Florida. To the contrary, Lockheed contends that the Illinois limitation of damages does not offend the public policy of Florida, and that its courts, following Wiener v. United Air Lines, S.D.Cal., 1964, 237 F. Supp. 90, and Cherokee Laboratories, Inc. v. Rogers, Okl., 1965, 398 P.2d 520, and adhering to the general rule we previously recognized for Florida in out-of-state automobile-collision cases, Kilmer v. Gustason, 5 Cir., 1954, 211 F.2d 781, 783, would apply the Illinois limitation to this cause of action.[1]
[1] We are informed by Lockheed that the result reached by the District Court herein and for which it now contends, was likewise reached by Judge Dyer in Graboski v. Northwest Airlines, Inc., S.D.Fla., No. 63-412-Civ-DD, when he granted a partial summary judgment in favor of defendants on December 11, 1963.
(3) Question of Law to be Answered
Would the State Courts of Florida, for reasons of public policy or otherwise, refuse to apply the Illinois limitation of damages in the above situation, and if so, would any limitation of damages apply?[2]
[2] In framing this question, we do not intend to foreclose the Supreme Court of Florida from deciding upon consideration of the allegations and facts in the record (e.g., that this is a suit against the manufacturer of the plane, not the common carrier, alleging negligent design and maintenance) that perhaps the law of a third forum (neither Illinois nor Florida) governs and supplies the limitation of damages.
The entire record in this case, together with copies of the briefs of the parties in this Court, are transmitted herewith.
 WARREN L. JONES
 WARREN L. JONES
 United States Circuit Judge
 Presiding

[2] Ill. Ann. Stat., Ch. 70, Sec. 1-2 (Smith Hurd). The Florida act clearly relates only to deaths "in this state" caused by wrongful act or default. F.S. Sec. 768.01(1), F.S.A.
[3] Cf. Kilberg v. Northeast Airlines, Inc., 1961, 9 N.Y.2d 34, 211 N.Y.S.2d 133, 172 N.E.2d 526, basing a contrary conclusion on an express constitutional provision in N.Y. that in actions of this class "the amount recoverable shall not be subject to any statutory limitation." N.Y.Const., Art. I, Sec. 16.
[4] For discussion of the nature of implied warranty actions in this jurisdiction see Carter v. Hector Supply Co., Fla. 1961, 128 So.2d 390.
[5] See Public Admin. v. Curtiss-Wright Corp. (1963), 224 F. Supp. 236; Scudder v. Union Nat. Bank of Chicago, 91 U.S. 406, 23 L.Ed. 245; cases collected, 6 Fla. Jur., Confl. of Laws, Sec. 10.