# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 2, 2012

No. 11-30153

Lyle W. Cayce
Clerk

KELLY YELTON, Individually and on behalf of her minor children, K.D., L.Y. and L.R.L.Y.; ET AL,

Plaintiffs

v.

PHI, INCORPORATED; ET AL,

Defendants

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KAREN NELSON, Personal representative of the Estate of Charles Wilbur Nelson, III, deceased,

Plaintiff - Appellant

v.

AERONAUTICAL ACCESSORIES, INCORPORATED; BELL HELICOPTER TEXTRON, INCORPORATED; EDWARDS & ASSOCIATES, INCORPORATED; PHI AIR MEDICAL, INCORPORATED, also known as PHI, Incorporated, formerly known as Petroleum Helicopters, Incorporated; SIKORSKY AIRCRAFT CORPORATION,

Defendants - Appellees

Appeal from the United States District Court
for theEastern District of Louisiana

Before HIGGINBOTHAM, DAVIS, and STEWART, Circuit Judges..

No. 11-30153

W. EUGENE DAVIS, Circuit Judge:

In this wrongful death action, the sole question is whether the district court erred in applying the Louisiana Wrongful Death Act rather than the Florida Death Act. We find no error and affirm.

## Background

This is a wrongful death action arising out of a helicopter crash. The decedent, Charles Wilbur Nelson, III, lived in Pensacola, Florida with his parents. On January 4, 2009, he boarded a helicopter in Amelia, Louisiana that had been manufactured by Sikorsky Aircraft Corporation (Sikorsky) to travel to his job site at an offshore oil rig off the Louisiana coast in international waters. The helicopter was owned and operated by appellee PHI, Inc. The helicopter struck a bird approximately seven minutes after takeoff and crashed outside Morgan City, Louisiana. Eight of the nine individuals on board the helicopter were killed including Mr. Nelson.

The decedent left behind three survivors: his parents, Karen and Charles, and his son. The son, Landen Nelson, was born in 2003 to Nelson and Carly Schoen. Although the factual record remains undeveloped, it appears that Schoen had a contentious relationship with Nelson's parents.

After the decedent's death, his mother, Karen Nelson, filed this suit in Florida state court on behalf of herself, her husband (the decedent's father), and their grandson Landen, alleging negligence and products liability counts against the helicopter manufacturer, the windshield manufacturer, the helicopter operator, and the firm that maintained the helicopter. Schoen then filed a competing wrongful death claim in Louisiana for the benefit of Landen only.[1] A probate battled ensued in Florida state court over who should represent Charles Nelson's estate. The Florida court found that Schoen had "acted to the

---

[1] This claim was settled October 2011 as part of a larger compromise in this case. (E.D. La., Civil Action No. 2:09-3144, docs. 663, 667, 687).

No. 11-30153

detriment of the Nelsons with respect to their potential claim" and appointed Karen Nelson as personal representative of the decedent's estate.

Karen Nelson's wrongful death lawsuit in Florida state court was removed to a Florida federal court. The defendants filed a motion to transfer the case to the Eastern District of Louisiana pursuant to 28 U.S.C. § 1404(a), which was granted, and the case was transferred to the Eastern District of Louisiana, where other litigation arising out of the accident was pending. The district court consolidated this action with the other cases arising out of the same helicopter crash. The defendants moved to dismiss the Nelson action under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The district court found that under the most significant relationship test, Louisiana law applied. As that law does not permit a wrongful death claim by a decedent's parent when that decedent is survived by a child, the court granted the defendants' motions to dismiss under Rule 12(b)(1). Nelson timely appealed.

## DISCUSSION

### *Standard of Review*

The issue on appeal is whether the district court correctly determined that Louisiana's wrongful death statute, rather than Florida's wrongful death statute, governs appellant's case. We review a district court's choice of law determination *de novo*.[2]

When an action has been transferred from another judicial district pursuant to 28 U.S.C. § 1404(a), the choice-of-law rules of the transferor court apply.[3] Because the transferor court was located in Florida, the parties agree that Florida's choice of law rules apply.

---

[2] *Fogleman v. ARAMCO*, 920 F.2d 278, 282 (5th Cir. 1991).

[3] *Ferens v. John Deere Co.*, 494 U.S. 516, 523 (1990) (superseded by statute on other grounds).

3

No. 11-30153

To resolve choice-of-law questions in wrongful death actions, Florida adopted the "most significant relationship" test set forth in the Restatement (Second) Conflict of Laws §§ 145 and 175.[4] The standards in §145 and §175 incorporate by reference the principles stated in § 6 of the Restatement.[5] Section 6 provides two alternate instructions. Subsection 1 states: "A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law." Subsection 2 provides a list of seven factors that a court should consider in evaluating which state has the most significant relationship to the occurrence and the parties when no such directive is made.

The district court concluded that Louisiana had the most significant relationship to the occurrence and found that Louisiana law should apply. Under Louisiana law, wrongful death actions are governed by Louisiana Civil Code Article 2315.2. That article provides that a parent of the deceased may bring a wrongful death action only if the decedent "left no spouse or child surviving."[6] Under the Florida Wrongful Death Act, a wrongful death action "shall be brought by the decedent's personal representative, who shall recover for the benefit of the decedent's survivors and estate all damages, as specified in this act, caused by the injury resulting in death."[7] Under Florida's law, a

---

[4] *See Bishop v. Fla. Specialty Paint Co.*, 389, So.2d 999, 1001 (Fla. 1980) (citing RESTATEMENT (SECOND) CONFLICT OF LAWS §§ 145-146 (1971)).

[5] Section 145, the general principle for tort claims states that "[t]he rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which . . . has the most significant relationship to the occurrence and the parties under the principles stated in § 6." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(1). Similarly, § 175 provides that, in a wrongful death action, the local law of the state where the injury occurred applies "unless . . . some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties." *Id.* § 175.

[6] La. Civ. Code art. 2315.2(A)(2).

[7] Fla. Stat. § 768.20; *see, e.g.*, *Am. Airlines v. Montero*, 741 So. 2d 587, 588 (Fla. Dist. Ct. App. 3d Dist. 1999) (noting the parties' agreement that under Florida law, a wrongful death action may only be brought by the decedent's personal representative).

personal representative may bring an action for the decedent's parents *and* children.[8]  The district court concluded that Louisiana law applied, and under that law, the parent's suit was precluded because the decedent had a surviving child.  For that reason, the court dismissed Karen Nelson's suit.

## I.

Appellant Karen Nelson argues first that the Florida Wrongful Death Act has a "statutory directive . . . on choice of law" requiring application of Florida law based on Restatement (Second) Conflict of Laws § 6(1) because the statute was intended by the legislature to have an extraterritorial effect.  According to Nelson, the Florida Appellate Court's holding in *Hughes ex rel. Bloom v. Unitech Aircraft Services*[9] supports their view that the act has extraterritorial effect.  Because a statutory directive regarding choice of law for wrongful death actions exists, she argues, the district court erred in reaching § 6(2) and concluding that because Louisiana had the most significant contacts to the case and the parties, Louisiana law applied.  Although Nelson states that Florida law would be applicable under § 6(2) as well, she does not specifically argue that point. She does assert as a more general matter that the district court erred in failing to engage in a separate analysis "as to this action and this plaintiff only."[10]

Appellee PHI argues that the Florida Wrongful Death Act does not trigger § 6(1) because the Florida Death Act does not contain a statutory directive requiring that the Florida Death Act always be applied extraterritorially.  PHI does not challenge Nelson's claim that the Florida Wrongful Death Act may have extraterritorial application where Florida has the most significant contacts with the occurrence of the death occurring outside Florida.  They argue that the act

---

[8] *See* Fla. Stat. § 768.21.

[9] 662 So. 2d 999 (Fla. Dist. Ct. App. 4th Dist. 1995).

[10] Appellant's Br. at 15.

is not a statutory directive that Florida Act be applied the extraterritorially under the circumstances of this case.

Appellant's argument that the act includes a Section 6(1) statutory directive that always requires the act to be applied extraterritorially is premised on a 1972 amendment to Florida's wrongful death statute. Before the amendment, the wrongful death statute began "whenever the death of any person <u>in this state</u> shall be caused by the wrongful act . . ."[11] The 1972 amendment removed the italicized language so that post amendment the statute began "when the death of a person is caused by the wrongful act . . .". FLA. STAT. § 768.19 (1993). Appellant argues that this change qualifies as a Section 6(1) statutory directive. Appellant reasons that this change reflected a legislative intent that the act be applied extraterritorially without regard to which jurisdiction had the most significant contacts with the accident and the parties under Section 6(2).[12]

We disagree for a number of reasons. First, this argument ignores the historical development of the conflicts rule in tort cases and the gap that existed under the prior version of the act which the statutory revision fixed. Under the First Restatement of Conflicts in 1934, the law of the place of injury or death applied and this rule was in place in virtually all states.[13] Thus, under that

---

[11] See *Hughes*, 662 So.2d at 1001 (quoting prior version of then FLA. STAT. § 758.01) (emphasis added).

[12] Appellant's Br. at 12-14. Appellants cite to an article by the reporter of the Florida Law Revision Commission's wrongful death project for the proposition that "[o]ne of the inequities to be remedied by the new wrongful death law was that the death of a person outside Florida yielded no recovery for survivors. See L.S. Powers, *The Wrongful Death Mess in Florida*, 45 FLA. BAR J. 634, 634 (Dec. 1971).

[13] For example, in *Proprietors Insurance Co. v. Valsecchi*, two Florida residents rented a plane from a Florida company, took off from a Florida airport on a flight that was also to end in Florida, then crashed and perished in North Carolina by "mere happenstance." 435 So.2d 290, 295 (Fla. 3d DCA 1983). The court in that case found that under the *lex loci delicti* rule of the First Restatement, North Carolina law would apply, while under the most significant relationship test of the Second Restatement, Florida law would govern. *Id.*, at 294.

regime, Florida's wrongful death statute only covered deaths that occurred in the state of Florida, and this worked no injustice because deaths that occurred elsewhere would be governed by the laws of those states.[14]

This status changed in the 1960's and 1970's when states began to abandon the *lex loci delicti* rule and adopt the most significant relationship test of the Second Restatement applicable here.[15]   This change meant that the relatives of a Florida resident who died in another state which had adopted the most significant relationship test would have no cause of action in that state where Florida had the most significant relationship to the accident and the parties.   That state would look to its conflicts rule and determine that Florida law applied and it would then conclude that the plaintiff's surviving relatives had no cause of action under the Florida act because the death occurred outside of Florida.[16]

---

[14] There were exceptions to this rule.   Florida courts would override the outcome dictated by their rigid choice of law rules, as a refusal to "grant comity" to those states whose law yielded an outcome contrary to the "public policy of Florida as declared by the Florida legislature."   *In re Air Crash Disaster at Boston, Massachusetts on July 31, 1973*, 399 F.Supp. 1106, 1117 (D. Mass. 1975) (citing *Gillen v. United Services Automobile Ass'n.*, 300 So.2d 3, 7 [Fla. 1974]) and *Hopkins v. Lockheed Aircraft Corp.*, 201 So.2d 743, 751 [Fla. 1967]).   These cases mainly concerned substantive insurance laws, where the law of the state of the injury and death placed a limitation on damages or did not grant coverage for certain injuries and acts recognized in Florida.   Since Florida's adoption of the conflict rules of the Second Restatement, these exceptions seem to be no longer necessary, and in any case have not been applied in any case presented to us or that we found in our research, and are thus found inapplicable here.

[15] Hay, Borchers & Symeonides, *Conflict of Laws* § 2.16 (5th ed. 2010) (showing 22 states had formally abandoned the *lex loci delicti* rule by 1973, and a majority had abandoned it by the end of the decade), § 17.28 (discussing the transition that occurred in the 1950's and 1960's in American choice of law jurisprudence); *Comments on Babcock v. Jackson, a Recent Development in Conflict of Laws*, 63 COLUM. L. REV. 1212, 1213-14 (1963) (discussing the early attempts to find an alternative to the *lex loci delicti* rule).

[16] *See* Powers, *supra* fn. 12, 45 FLA. BAR J. at 636 (arguing the "in this state" requirement should be removed because, depending on the choice of law and wrongful death provisions of other jurisdictions, it could leave the relatives of Florida decedents without a remedy; discussing the hypothetical example of a Florida congressman injured in Florida who dies in Washington D.C., where the Washington D.C. wrongful death statute only applies if the injury occurs in the district, and Florida's only applies if the death occurs in Florida); *Hopkins v. Lockheed Aircraft Corp.*, 201 So.2d 743, 747-48 (Fla. 1967) (finding that the pre-

Thus, once most states had adopted the significant relationship test, the most reasonable explanation for the Florida legislature's deletion of the phrase "in this state" was to avoid the obvious gap in coverage for the death of a Florida resident that occurred in another state. Accordingly, the most plausible explanation for the amendment was to <u>permit</u> (not mandate) recovery for death regardless of where the death occurred under circumstances where Florida law applied because Florida had the most significant relationship to the occurrence and parties.[17]

Every court that has examined this question since the adoption of the new statute has agreed that the Florida wrongful death statute may be applied extraterritorially by the relatives of Florida decedents, but that it is not a statutory directive that must be applied in such suits. The Eleventh Circuit in *Judge v. American Motors Corporation* expressly rejected the argument appellant makes here that the Florida legislature issued a Section 6(1) statutory directive to require other jurisdictions to apply the Florida act.[18] In that case, the plaintiff, a Florida resident, flew to Mexico for vacation and rented a vehicle in Mexico from a local rental company. While driving the vehicle in Mexico the plaintiff alleged that because of defects in the vehicle it went out of control and collided with an oncoming vehicle. Both Mr. Smith and his wife were killed in the accident. The survivors sued in federal court in Florida. The district court concluded that the substantive law of Mexico controlled the appellant's claim for

_____

amendment Florida wrongful death "statute applies only to deaths occurring in this state, and since the death involved here" – a plane crash in Illinois that killed a Florida resident – "occurred outside the State of Florida, it would not alone support a cause of action on the facts involved in this case) (holding the suit could proceed under the Illinois wrongful death statute).

[17] *Id.*; *see generally* George A. Bermann, *Transnational Litigation*, 232-235 (2003) (discussing mandatory v. permissive choice of law rules).

[18] 908 F.2d 1565, 1569, fn. 4 (11th Cir. 1990).

wrongful death and because Mexico did not recognize such a claim the court dismissed the suit.[19]

On appeal the Eleventh Circuit disagreed with the district court that Mexico had the most significant relationship to the occurrence and the parties. The appellate court directed the district court to consider whether Florida – the state of residence of the decedents – or Michigan – the state of residence of the designer and manufacturer of the vehicle – had the most significant relationship. Before considering these relationships, the court stated that the present case is "controlled by Section 6(2) [the most significant relationship test] because neither the Connecticut legislature nor the Florida legislature has, pursuant to Section 6(1), issued a statutory directive to guide conflicts disputes."[20]

Thus the Eleventh Circuit(which has jurisdiction over federal cases in Florida) made the *Erie* guess that the Florida legislature did not include a Section 6(1) statutory directive to guide conflict disputes in its wrongful death act.[21]

Another Florida appellate court followed a similar analysis of the Florida wrongful death statute in *Harris v. Berkowitz.[22]* In that case Florida residents were killed in Maine when the car in which they were riding in Maine struck a tree. The decedent was a Florida resident and was visiting Maine for summer camp and intended to return to Florida after summer camp was completed. The court made a detailed analysis of the most significant relationship between Florida and Maine and concluded that because Florida had the most significant relationship to the occurrence and to the parties, the Florida Wrongful Death Act

---

[19] *Id.*, 908 F.2d at 1567.

[20] *Id.*, 908 F.2d at 1569, fn. 4.

[21] *Id.*

[22] 433 So.2d 613 (Fla. App. 1983).

controlled.  Although the court applied Florida law it did so because Florida had the most significant relationship to the occurrence and the parties.[23]

Appellant relies on dicta in an intermediate Florida Court of Appeals decision, *Hughes v. Unitech Aircraft Service, Inc.*[24]  In that case the issue was whether Florida state court had jurisdiction over an action for wrongful death when the death occurred on the high seas.  The court concluded that under the Supreme Court's decision in *Offshore Logistics v. Tallentire*,[25] the Death on the High Seas Act preempted any state cause of action but that the federal statute included a provision similar to the "savings to suitors" clause which permits in personam maritime actions to be brought in state courts for relief under DOHSA.

In dicta the court distinguished a California case which had held that California's wrongful death statute did not encompass deaths occurring outside of the state.  The court observed that Florida amended its wrongful death statute in 1972 to delete the words "in this state" which had the effect of not requiring that the death occur in Florida in order to sue under the statute.  The parties did not dispute that under the amended statute the decedent need not meet his death in Florida in order for the act to apply.  But we do not read this case as holding that application of the Florida statute <u>must</u> apply whenever a Florida resident is killed outside the state of Florida.  The analysis is completely consistent with our conclusion that the amendment permitted – but did not require – a survivor to seek recovery under the Florida Death Act when the death occurred outside the state.  In any event, the holding of the case is simply that Florida state courts have jurisdiction over DOHSA claims even though

---

[23] *Id.*, 433 So.2d at 614-15.

[24] 662 So.2d 999 (1995).

[25] 477 U.S. 207 (1986).

No. 11-30153

Florida's wrongful death statute remedies are preempted by the remedies authorized by DOHSA.[26]

## II.

Appellant Karen Nelson argues next that the district court erred in its analysis that Louisiana law should apply because it is the state with the most significant relationship to the incident under Restatement (Second) Section 6(2). The district court explained its reasoning as follows:

> As Defendants point out, nearly every factor–other than the fact that Decedent Nelson and his family live in Florida–weighs in favor of applying Louisiana law. Defendant PHI is a Louisiana corporation, headquartered in Louisiana. The helicopter was maintained and repaired in Louisiana–any misconduct would have occurred here. Passengers boarded in Louisiana, Louisiana was the only state over which the helicopter flew, and Louisiana was the only state in the intended flight path. The witnesses live in Louisiana, and the rescue operation was based in Louisiana. Mr. Yelton, the only survivor of the crash, was treated in Louisiana hospitals. Everyone in the crash was working for a Louisiana company or living in Louisiana. . . .
>
> It is overwhelmingly clear that Louisiana is the state with the most significant relationship with the helicopter crash.[27]

We agree with this analysis and agree with the district court's conclusion that Louisiana had the most significant relationship with the occurrence and the parties.

## CONCLUSION

For the reasons stated above, we affirm the judgment of the district court.

AFFIRMED.

---

[26] *Hughes*, 908 F.2d at 1001.

[27] No. 2:09-cv-03144, doc. 332 at p. 10 (E.D. La. Sept. 23, 2010).