SHEFFIELD SMITH *vs.* ARCHIBALD ANDERSON and GEORGE A.
AMES.

January Term, 1898.

Present: Ross, C. J., TAFT, ROWELL, TYLER, START and THOMPSON, JJ.

*Conflict of Laws—Situs of Contract—Trover—What Amounts to a Con-
version—Mitigation of Damages.*

If there is nothing else in the case to show in reference to what state the
parties made their contract, the question is determined by the place
where it was concluded.

A judgment is not to be reversed, on exceptions, because the jury misunder-
stood a correct charge. The remedy is by motion to set aside the verdict.

If the plaintiff and the defendant made a contract in Rhode Island, that the
plaintiff should furnish the defendant four thousand dollars and receive
therefor his note for four thousand, six hundred dollars, and the plaintiff
sent to the defendant in Vermont only three thousand, eight hundred
dollars, and the defendant there accepted that in lieu of the larger sum,
the contract was not consummated until such acceptance, and so was a
Vermont contract.

If a note is made in one state, an agreement afterwards made in another
state to extend the time of payment does not change the situs of the
contract.

A mortgagor of lumber caused it to be moved to save it from damage by
water, but with no intention of interfering with the mortgagee's rights.
Afterwards, while in its new location, it was destroyed by a fire which it
would have escaped if it had not been moved. *Held,* no conversion.

In trover by mortgagee against mortgagor for selling a portion of the
mortgaged property, the defendant cannot show in mitigation of
damages that the property disposed of was replaced by other which was
sold under foreclosure proceedings and the avails thereof paid to the
plaintiff, it not appearing that the plaintiff knew of or consented to the
substitution.

TROVER for lumber. Trial by jury at the December Term,
1896, Windsor County, *Munson,* J., presiding. Verdict and
judgment for the defendants. The plaintiff excepted.

It appeared that the plaintiff held a note for $4600, signed
by the defendant Ames, secured by a mortgage upon lumber.

The note was dated at Norwich, Vermont, where the maker resided. The lumber was situated in the same town, and the mortgage was there executed and recorded. The plaintiff resided in Rhode Island, where, it was conceded, any rate of interest agreed upon by the parties is legal. The defendant Ames arranged with the plaintiff, in Rhode Island, for a loan of $4000, for which he was to give him the note referred to for $4600. The plaintiff claimed that $200 was to be paid to the plaintiff's agent Moore, under an agreement between Ames and Moore, for the latter's services in procuring the loan and passing upon the security; that after the note and mortgage were executed, Moore took them to Norwich with checks payable to Ames for $3800, and one payable to himself for $200, and, after again examining the records, delivered the check for $3800 to Ames, retaining the other, as agreed, and left the mortgage to be recorded.

The defendant claimed that he never agreed to allow Moore $200, or knew that he retained it, and that he never understood why he did not receive the $4000.

It appeared that when the mortgage was given, the lumber was stuck up in the yard of the defendant's mill in sixty different piles, as described in the mortgage, each pile marked by a tin tag attached thereto with the plaintiff's name thereon. The defendant did not deny that it was part of the contract that none of the lumber should be removed or touched.

Such payments had been made on the note before the alleged conversion that if the amount furnished was only $3800, there was nothing due upon it, if treated as a Vermont contract.

*John H. Watson*, for the plaintiff.

*Hunton & Stickney*, for the defendant.

TAFT, J. There were nine exceptions reserved on trial.

(1) The ninth relating to the admission of the statutes of New Hampshire relating to interest and usury is waived.

(2)   The court charged that whether or not the note had been paid might depend upon whether the contract was made in Vermont or Rhode Island.   The plaintiff insists this was error, for the jury might well understand from this part of the charge that the place of making the contract was controlling and counsel argue, that all the facts and circumstances pertaining to the transaction, with all legal presumptions, should have been submitted to the jury for them to find with reference to the law of which state the contract was made.   It does not appear but that this was done, and, if otherwise it would be error, we must infer that it was.   The charge as given embodied a sound legal proposition.   The court did not say that the right to recover depended upon whether the contract was made in Vermont or Rhode Island, but that it *might*, and so it would, if there was nothing in the case as to the intention of the parties in reference to which law they contracted.   If the jury did not find that the parties contracted with reference to either place, then the right to recover might depend upon the law of the place in which the contract was made.   It is unsafe to reverse a judgment for the reason that the jury misunderstood the charge of the court when the charge was correct both in law and in language.   If a jury misunderstand the charge of the court the remedy is not by exception to a charge, which is correct, but by motion to set aside the verdict and grant a new trial.   To reverse a judgment upon exception when the trial court has committed no error, is illogical to say the least, and should never be done; in fact it is illegal to do so.

(3)   An exception was taken to the charge in regard to the check for $200.

The testimony of the defendants tended to show that an arrangement was made in Rhode Island that the plaintiff should advance the defendant Ames the sum of $4000 upon the note in suit, but that the plaintiff sent him, Ames, cheques for $3800 only, Moore, who was then acting for the plaintiff, taking the cheque for $200.   The court charged,

under the plaintiff's exception, that if this was true, the contract was not finally consummated until Ames accepted the cheques for $3800, for that the defendant was under no obligation to accept $3800 if by the terms of the contract, as entered into in Rhode Island, he was to have $4000, and it did not become a consummated contract until the latter sum of money was accepted by Ames and as that was done at Norwich in this state, it was in a fact a contract finally executed in Vermont. The charge was correct, that, if the defendants' claim was true, the contract was incomplete until he accepted it in Vermont, and that it then became a Vermont contract.

(4) The exception taken in regard to the effect of the payment of a certain sum for the extension of the time of payment of the note for thirty days, did not change nor affect the situs of the original contract. No change was made in any of its terms save the time of payment, none in the rate of interest, none in the place of payment. It is like a case in which security is given in one state upon a loan made in another and it is held that taking security does not necessarily alter the locality of the contract; or a contract made in one country subject to a condition to be performed in another in which the law is different and it is held that the law where made governs because the condition when fulfilled refers back to the time of the contract.

(5) Another question was made with reference to the removal of eight certain piles of lumber. The testimony tended to show the lumber was being injured in the place where it was then piled, that the defendant Ames caused the lumber to be removed, without the consent, knowledge, or authority of the plaintiff, to another part of the mill yard many rods away, with other piles not covered by the mortgage and that the piles removed were not marked as required, to indicate that they were covered by the mortgage. This was done to prevent injury to the lumber from water and subsequently it was burned. The court charged if

this was done without the intent of interfering with plain-tiff's rights and of converting the property to his own use, it. would be no conversion. This instruction was correct. The removal did not prevent its being held under the mortgage. It was done for the purpose of protecting the joint interests of both the plaintiff and the defendant Ames. The latter exercised no control or dominion over it except to perform such acts as tended to its preservation. Would removing property from a burning building by a mortgagor, to prevent its destruction, be a conversion? We doubt if any one will so contend. Neither would a removal to prevent it from injury by water, although the lumber would not have burned had it been left where it was originally piled, be a conversion. The removal was not the proximate cause of its destruction. *Davis* v. *C. V. R. R. Co.*, 66 Vt. 290.

(6) Two exceptions were reserved in regard to the admission of testimony tending to showing the facts in. relation to the lumber being damaged where originally piled, their situation in respect to water and their liability to damage. From what is said under the preceding point it follows that the testimony was properly admitted to show the situation of the piles removed and their liability to damage in case they were not removed.

(7) The remaining question was reserved in regard to the conversion of twenty-one thousand feet of lumber taken from three piles that were covered by the plaintiff's mortgage. Testimony tended to show that the workmen of Ames. delivered it to Anderson who took the property and used it. That subsequently Ames, upon ascertaining the fact, replaced it with green lumber. This was done without the consent or knowledge of the plaintiff and the testimony tended to show that it was done by mistake. The court instructed the jury that if the defendant took some of the property and after-wards replaced it in such a manner and under such circum-stances that the plaintiff would have the benefit of that replacement, such replacement would go in mitigation of the

damages. To this instruction, the plaintiff excepted. This presents to us the question whether a mortgagor can take mortgaged property and replace it with other property without the consent or knowledge of the mortgagee. The record states there was no testimony in the case which tended to show that the plaintiff had the benefit of such replacement. The testimony tended to show that the twenty-one thousand feet of lumber taken was replaced by other and green lumber by Ames' direction and so became commingled with the mortgaged property. The jury might well infer from the fact that the lumber was replaced and that the mortgaged property was sold by an officer under the mortgage, that the plaintiff did have the benefit of it. The question then is before us, whether the replacement and the sale of it for the benefit of the plaintiff should mitigate the damages he sustained by reason of the conversion of the originally mortgaged property. The only adjudication bearing directly upon this subject, that we are aware of is, *Morgan* v. *Kidder*, 55 Vt. 367. In that case Morgan sold a herd of cattle including a yoke of oxen to Green upon condition that they were to remain his property until they were fully paid for. Green sold the oxen to Kidder and the latter in an action of trover brought against him for the conversion of the oxen, offered to show in mitigation of damages that the identical money which he paid Green was subsequently paid to the plaintiff and applied upon his lien debt and it was claimed that this payment should go in mitigation of the damages sustained by the plaintiff. The court held otherwise, that the money paid by Green to the plaintiff could not be allowed in mitigation of damages. That case is on "all fours" with this and must control it. The instruction of the court in this respect was erroneous. The question then arises, did it harm the plaintiff? The latter was entitled to a verdict at least for nominal damages for the conversion of the twenty-one thousand feet of lumber in case there was anything due him upon the note, and we must presume the

jury were properly instructed in this respect, and as the jury returned a verdict for the defendants, they must have found that the contract was a Vermont contract and that there was nothing due him thereon. The plaintiff was not harmed by the erroneous ruling.

*Judgment affirmed.*