**In re AIR CRASH DISASTER AT BOS-
TON, MASSACHUSETTS ON
JULY 31, 1973.**

**No. 160.**

United States District Court,
D. Massachusetts.

Aug. 21, 1975.

Tampa, Fla., Stephen J. Frasca, Nashua, N. H., MacFarlane, Ferguson, Allison & Kelly, Tampa, Fla., Edward Swartz, Michael B. Latti, Boston, Mass., John I. Van Voris, T. Paine Kelly, Jr., Tampa, Fla., Shane Devine, Arthur A. Greene, Manchester, N. H., Peter V. Millham, Laconia, N. H., Leonard S. Green, Dort S. Bigg, Manchester, N. H., Ronald L. Snow, Concord, N. H., Richard E. Davis Associates, Barre, Vt., Kolvoord, Overton & Wilson, Essex Jct., Vt., Paul, Frank & Collins, Gravel & Shea, Dinse, Allen & Erdmann, McNamara & Fitzpatrick, Latham, Estman & Tetzlaff, Burlington, Vt., Theodore Corsones, Rutland, Vt., Wool & Murdoch, Burlington, Vt., for plaintiffs.

Robert Fulton, Boston, Mass., George N. Tompkins, Jr., Condon & Forsyth, New York City, Robert L. Chiesa, Manchester, N. H., Ryan, Smith & Carbine, Rutland, Vt., for Delta Air Lines.

John M. Harrington, Jr., Boston, Mass., Crowe, McCoy, Agoglia, Congdon & Zweibel, Mineola, N. Y., for McDonnell Douglas Corp.

Andrew B. Goodspeed, Boston, Mass., for Sperry Rand.

Michael J. Pangia, Trial Atty., Torts Section, Aviation United Civ. Div., Dept. of Justice, Washington, D. C., for United States.

Speiser & Krause, New York City, Stephen T. Keefe, Jr., Quincy, Mass., Abner R. Sisson, Boston, Mass., Milton G. Sincoff, Maurice L. Noyer, New York City, Joseph P. Donahue, Jr., Lowell, Mass., Robert E. Perez, Wagner, Cunningham, Vaughan, Hapner & May,

## OPINION AND ORDER

CAFFREY, Chief Judge.

These actions for wrongful death arise out of the crash of a Delta aircraft in Boston, Massachusetts on July 31, 1973. By order of the Judicial Panel on Multidistrict Litigation, cases were transferred to this Court from the district courts in New Hampshire, Vermont and Florida for consolidated and coordinated pretrial proceedings pursuant to 28 U.S. C.A. § 1407 (Supp.1975). Cases were also transferred to this Court from New York pursuant to sections 1404(a) and 1407 of the Judicial Code. Jurisdiction is predicated solely on diversity of citizenship. This matter came before the

Court on motions by defendant Delta Airlines, Inc. seeking a ruling that the two hundred thousand dollar limitation on damages contained in the Massachusetts Wrongful Death Act in effect at the time of the crash, 1972 Mass.Stat. ch. 440, § 1,[1] applies to the actions filed in the federal courts of Vermont, New Hampshire, Florida and New York, as well as to those originally filed in this district.

A federal court sitting in diversity must apply the substantive law of the forum state including its choice of law rules. *Klaxon v. Stentor Elec. Co., Inc.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L. Ed. 1477 (1941); *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Similarly, a United States District Court to which an action is transferred pursuant to 28 U.S.C.A. § 1407 must apply the substantive law of the transferor state and circuit. *In re Four Seasons Securities Law Litigation,* 370 F.Supp. 219 (W.D.Okl.1974); *In re Plumbing Fixtures Litigation,* 342 F. Supp. 756 (Jud.Pan.Mult.Lit.1972); *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.,* 309 F.Supp. 1053 (E.D.Pa.1969). See *Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964).

Therefore, the applicable damage provisions must be determined in each case by applying the substantive law of the original forum, including its choice of law rules.

Although there are differences among the complaints filed in each state, no determinative factual distinctions exist within the group of cases filed in each state whence these cases came and therefore a general ruling may be made as to the law applicable to all of the actions filed in each state.

### 1. *Vermont*

The basis of Delta's motions to dismiss the actions filed in Vermont to the extent that they seek damages in excess of two hundred thousand dollars is the contention that Vermont adheres to the *lex loci delicti* choice of law rule in tort actions and therefore that the law of Massachusetts, the place of injury, controls these actions. The plaintiffs concede that Vermont was at one time a *lex loci delicti* state in regard to choice of law issues but maintain that today the Vermont Supreme Court, were it presented with the instant case, would discard that rule in tort actions and adopt the "significant contacts" rule of the Second Restatement of Conflicts as it has already done in contract actions. See *Pioneer Credit Corp. v. Carden,* 127 Vt. 229, 245 A.2d 891 (1961).[2] In response, Delta contends that there exists clear precedent in the Supreme Court of Vermont applying the *lex loci* rule in tort actions and specifically in wrongful death actions and that this Court is bound under *Erie* and *Klaxon* to follow these decisions.

---

1. 1972 Mass.Stat., ch. 440, § 1 reads in pertinent part:

    A person who . . . by his negligence causes the death of a person . . . shall be liable in damages in the sum of not less than five thousand, nor more than two hundred thousand dollars, to be assessed with reference to the degree of his culpability . . . ..

2. Plaintiffs submit that their causes of action for breach of the contract of safe carriage are governed by the contractual choice of law rule adopted in *Pioneer.* While it appears that the wording of Vermont's wrongful death statute, Ver.Stat.Ann. tit. 14,

§ 1491 (1974), is broad enough to encompass actions based on contracts, see W. Prosser, Law or Torts § 127 (4th ed. 1971), I rule that the choice of law rule applicable to these counts, which are essentially actions to recover damages for negligent conduct causing death, is the tort choice of law rule regularly applied in actions for wrongful death resulting from negligence. *Griffith v. United Air Lines, Inc.,* 416 Pa. 1, 203 A.2d 796 (1964); *Kilberg v. Northeast Airlines, Inc.,* 9 N.Y. 2d 34, 311 N.Y.S.2d 133, 172 N.E.2d 526 (1961); see *Scott v. Eastern Airlines,* 399 F.2d 14 (3 Cir. 1967), cert. denied, 393 U.S. 979, 89 S.Ct. 446, 21 L.Ed.2d 439.

Delta's interpretation of this Court's function in diversity cases under the *Erie* doctrine is overly restrictive. Early decisions of the Supreme Court represented by *Fidelity Union Trust Co. v. Field,* 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109 (1940), which required automatic application of state court decisions have now been discredited. See *Bernhardt v. Polygraphic Co. of America,* 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956). The rulings of a highest state court must be taken as controlling "unless it can be said with some assurance that [that] Court will not follow them in the future." *Meredith v. Winter Haven,* 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943). This is clearly the view of the Second Circuit. "[D]ue to the continuing development of, and the ongoing changes in, today's concepts of legal liability, we, in determining the state law that we are to apply, cannot permit ourselves to be confined by state court decisional approaches if we have sound grounds to believe that the highest state court would in a case like ours adopt a different approach than approaches in prior cases." *Calvert v. Katy Taxi, Inc.,* 413 F.2d 841, 846 (2 Cir. 1969). See *Warner v. Gregory,* 415 F.2d 1345 (7 Cir. 1969), *cert. dismissed,* 397 U.S. 930, 90 S.Ct. 817, 25 L.Ed.2d 112; *Roginsky v. Richardson-Merrell, Inc.,* 378 F.2d 832 (2 Cir. 1967) (On Petition for Rehearing En Banc); *Strubbe v. Sonnenschein,* 299 F.2d 185 (2 Cir. 1962).

In *Hausman v. Buckley,* 299 F.2d 696 (2 Cir.), *cert. den.,* 369 U.S. 885, 82 S.Ct. 1157, 8 L.Ed.2d 286 (1962), relied upon by Delta, the Court explicitly recognized that the function of a federal court sitting in diversity is to ascertain what state law *"is"*. *Hausman,* 299 F.2d at 704. (Emphasis added.) To the extent that *Hausman* may be read, as it is by Delta, to indicate that where there is a clearly enunciated state rule, automatic adherence to it by federal courts is re-

quired, *Hausman* is contrary to the established position of the Second Circuit. "[W]hen a federal court must determine state law, it should not slavishly follow lower or even *upper court* decisions but ought to consider all the data the highest court of the state would use. See Corbin, The Laws of the Several States, 50 Yale L.J. 762 (1941). Such is the established position of this court." *Roginsky,* 378 F.2d at 851. (Emphasis added and citations omitted.)

A review of Vermont decisions reveals that the most recent case in which the Vermont Supreme Court applied the *lex loci* rule in a tort action is *Goldman v. Beaudry,* 122 Vt. 299, 170 A.2d 636 (1961). That case was decided before the Restatement Second adopted in § 145 the "significant contacts" approach in tort cases and both parties in their briefs in *Goldman* assumed the applicability of the *lex loci* rule. Thus, the Vermont Supreme Court has never been presented with an opportunity to reconsider application of the *lex loci* rule in tort actions in favor of a modern approach.

A review of the Vermont cases in which the *lex loci delicti* rule has been applied suggests the conclusion that it was adopted and applied in Vermont for no other reason than because it was the prevailing rule. As authority for its application, the Vermont Supreme Court relied on decisions of New Hampshire, New York and Pennsylvania, all of which have abandoned the *lex loci* rule,[3] and the First Restatement of Conflicts, *Goldman, supra; Brown v. Perry,* 104 Vt. 66, 156 A. 910 (1931). It is not necessary that the decisions of a state court be explicitly overruled in order to lose their persuasive force as indications of what the law is. *Mason v. American Emery Wheel Works,* 241 F.2d 906 (1 Cir. 1957). In the instant case the abrogation of the *lex loci* rule by the very authorities relied upon by the Vermont Supreme Court in its decisions ap-

---

3. *Clark v. Clark,* 107 N.H. 351, 222 A.2d 205 (1966); *Babcock v. Jackson,* 12 N.Y.2d 73, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963);

*Griffith v. United Airlines, Inc.,* 416 Pa. 1, 203 A.2d 796 (1964).

plying the rule unquestionably weakens the precedential value of those Vermont decisions. This is especially true in view of the absence in the Vermont decisions of any manifestation of commitment to the rationale of the *lex loci* rule.

■ It is significant that in *Pioneer Credit Corp. v. Carden,* 127 Vt. 229, 245 A.2d 891 (1968), the Vermont Supreme Court applied the Restatement Second approach to choice of law problems in a contract case.[4] This ruling constitutes persuasive evidence that the *lex loci delicti* rule of the First Restatement is no longer the law of Vermont in tort actions. It would be illogical for this Court to conclude that the Vermont Supreme Court would refuse to adopt the Restatement Second approach in tort cases in light of its receptivity to the modern choice of law approach in contract cases and the readiness with which it abandoned the traditional choice of law rule *lex loci contractus.* Compare *Pioneer Credit Corp. v. Carden, supra,*

and *Boston Law Book Co. v. Hathorn,* 119 Vt. 416, 127 A.2d 120 (1956), with *Resource Holding Co. v. Shoff's Estate,* 105 Vt. 144, 163 A. 768 (1933) and *Smith v. Anderson,* 70 Vt. 424, 41 A. 441 (1891).

Also relevant to a determination of whether the Vermont Supreme Court would apply the traditional rule in these cases is the fact that the majority of courts which have considered the question have abandoned the *lex loci* rule in favor of a more flexible approach which permits analysis of the policies and interests underlying the particular issue before the Court.[5] Additionally, the commentators are overwhelmingly opposed to its retention and, although they disagree as to a substitute approach, all advocate a method which allows Courts to focus on the policies underlying the conflicting laws, the needs of the parties and the governmental interests which will be advanced by their application.[6]

---

4. Delta's contention that *Pioneer* turned on the failure of the plaintiffs therein to plead and prove the applicable Massachusetts law is correct. To arrive at its holding that Massachusetts law was applicable, however, the court applied the "significant contacts" choice of law rule of the Restatement Second and plaintiffs therefore properly cite that case for the proposition that Vermont has adopted that rule.

5. Courts which have rejected the *lex loci delicti* rule include:
*Armstrong v. Armstrong,* 441 P.2d 699 (Alaska 1968); *Schwartz v. Schwartz,* 103 Ariz. 562, 447 P.2d 254 (1968); *Reich v. Purcell,* 67 Cal.2d 551, 63 Cal.Rptr. 31, 432 P.2d 727 (1967); *Myers v. Gaither,* 232 A.2d 577 (D.C.App.1967); *First National Bank v. Rostek,* 514 P.2d 314 (Colo.1973); *Wartell v. Formusa,* 34 Ill.2d 57, 213 N.E.2d 544 (1966); *Fabricius v. Horgen,* 257 Iowa 268, 132 N.W.2d 410 (1965); *Wessling v. Paris,* 417 S.W.2d 259 (Ky.App.1967); *Beaulieu v. Beaulieu,* 265 A.2d 610 (Me. 1970); *Schneider v. Nichols,* 280 Minn. 139, 158 N.W.2d 254 (1968); *Mitchell v. Craft,* 211 So.2d 509 (Miss.1968); *Kennedy v. Dixon,* 439 S.W.2d 173 (Mo.1969); *Clark v. Clark,* 107 N.H. 351, 222 A.2d 205 (1966); *Pfau v. Trent Aluminum Co.,* 55 N.J. 511, 263 A.2d 129 (1970); *Babcock v. Jackson,* 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d

279 (1963); *Issendorf v. Olson,* 194 N.W. 2d 750 (N.D.1972); *Fox v. Morrison Motor Freight, Inc.,* 25 Ohio St.2d 193, 267 N.E. 2d 405 (1971); *Casey v. Manson Construction and Engineering Co.,* 247 Or. 274, 428 P.2d 898 (1967); *Griffith v. United Air Lines, supra; Woodward v. Stewart,* 104 R.I. 290, 243 A.2d 917 (1968); *Wilcox v. Wilcox,* 26 Wis.2d 617, 133 N.W.2d 408 (1965). But see, *McGinty v. Ballentine Produce, Inc.,* 241 Ark. 533, 408 S.W.2d 891 (1966); *Landers v. Landers,* 153 Conn. 303, 216 A.2d 183 (1966); *Folk v. York-Shipley,* 239 A.2d 236 (Del.1968); *McDaniel v. Sinn,* 194 Kan. 625, 400 P.2d 1018 (1965); *Johnson v. St. Paul Mercury Ins. Co.,* 256 La. 289, 236 So.2d 216 (1966); *Cook v. Pryor,* 251 Md. 41, 246 A.2d 271 (1968); *Abendschein v. Farrell,* 382 Mich. 510, 170 N.W. 2d 137 (1969); *Cobb v. Clark,* 265 N.C. 194, 143 S.E.2d 103 (1965); *Cherokee Laboratories, Inc. v. Rogers,* 398 P.2d 520 (Okl. 1965); *Oshiek v. Oshiek,* 244 S.C. 249, 136 S.E.2d 303 (1964); *Heidemann v. Rohl,* 86 S.D. 250, 194 N.W.2d 164 (1972); *Winters v. Maxey,* 481 S.W.2d 755 (Tenn.1972); *Marmon v. Mustang Aviator,* 430 S.W.2d 182 (Tex.1968).

6. See, e. g., Leflar, *Choice-Influencing Considerations in Conflicts Law,* 41 N.Y.U.L.Rev. 267 (1966); Currie, *Comments on Babcock v. Jackson, A Recent Development in Con-*

The ease with which the Vermont Supreme Court applied the significant contacts rule in *Pioneer* indicates that the main advantage of the traditional rule—ease in determining the law to be applied—would not impress that court as a convincing reason for retaining it. The other advantage of the traditional approach to choice of law, predictability of result, is not a strong consideration in tort cases which have their origin in purely fortuitous occurrences.

This Court is mindful of its duty under *Erie* to ascertain and apply state law and is cognizant of the fact that it is not free simply to adopt the better rule of law. However, consideration of the decisions of the Vermont Supreme Court applying the *lex loci delicti* rule in light of that Court's adoption of the Restatement Second approach to contractual choice of law questions and in view of the widespread rejection of the traditional rule by other courts, including those jurisdictions which historically have influenced the course of Vermont law, compels the conclusion that the Vermont Supreme Court would abandon the *lex loci* rule and would apply the "significant contacts" rule set forth in § 145 of the Restatement Second to determine the law governing the damages recoverable in these actions.

This conclusion is reinforced by the opinion of the Vermont District Court in *LeBlanc v. Stewart*, 342 F.Supp. 773 (D.Vt.1972). There Judge Holden held that the Vermont Supreme Court would apply the Restatement Second approach in a tort action where the issue presented was which state's law would apply to determine whether intra-family tort immunity would bar the suit.[7] The court

distinguished *Goldman, supra,* on the ground that the question of family immunity had no bearing on that decision. While this distinction is consistent with a federal court's duty to decide as little state law as is required, it is clear that the Court in *LeBlanc* at the very least carved an exception to the rule enunciated in *Goldman* which was a broad pronouncement that all rights and liabilities in a tort action are determined in accordance with the *lex loci delicti.*

A very recent decision of the Vermont Supreme Court further reinforces this conclusion. In *Zaleski v. Joyce,* 333 A. 2d 110 (1975), the Court adopted the contemporary doctrine of strict products liability set forth in § 402(A) of the Restatement (Second) of Torts. This decision is indicative of that court's tendency to be influenced by the Restatement, of which Judge Holden took note in *LeBlanc, supra,* and also of its willingness to bring its jurisprudence into accord with the modern view. See *Boston Law Book Co., supra* and *Pioneer Credit Corp., supra.*

■■ Section 145 of the Restatement Second provides that the applicable law with respect to an issue in tort is that of the state which has the more significant relationship with respect to that issue, to the occurrence and to the parties. General principles governing the choice of law include considerations relative to the interests of each state in having its law applied to the issue, the needs and interests of the parties, the needs of judicial administration, the promotion of interstate order, and the basic policies underlying the field of law. Restatement 2d § 6.[8] Contacts relevant to tort actions include: place of injury,

---

flict of Laws, 63 Colum.L.Rev. 1212, 1233 (1963); Ehrenzweig, *The "Most Significant Relationship" in the Conflicts Law of Torts,* 28 Law & Contemp.Prob. 700 (1963); Cavers, *A Critique of the Choice of Law Problem,* 47 Harv.L.Rev. 173 (1933).

7. It is interesting to note that Judge Holden authored the Vermont Supreme Court's opinion in *Goldman, supra,* when he was a member of that court.

8. Additional general considerations enunciated in section 6 of the Restatement Second including the need for predictability and the justifiable expectations of the parties are of little relevance to tort actions which arise out of unplanned occurrences. Restatement (Second) of Conflict of Laws, Explanatory Notes § 6, Comments g and i at 15–16.

place of conduct, domicile of the parties and the place where the relationship between the parties is centered. The weight to be given these contacts depends on their relevance to the particular issue. Restatement 2d § 145(2).

▪ The relevant facts to the determination of applicable law are as follows: The decedents were domiciled in Vermont and their estates are being probated in Vermont. For the most part, next of kin of decedents for whose benefit damages are recoverable in these actions are residents of Vermont. The decedents purchased their plane tickets in Vermont, boarded the aircraft in Vermont and expected to return to Vermont. The accident occurred in Massachusetts. Delta does business in both Massachusetts and Vermont.

The policy underlying each statute is an important consideration in determining which state has the more significant connection with the issue. The policy underlying the Vermont statute is clearly compensatory. "The court or jury . . . may give such damages as are just, with reference to the pecuniary injuries resulting from . . . death." Vt.Stat.Ann. tit. 14, § 1492(b) (1974). The applicable Massachusetts statute, in contrast, is punitive. Damages of up to two hundred thousand dollars are "to be assessed with reference to . . . culpability." 1972 Mass.Stat., ch. 440, § 1. The Vermont statute thus conforms to the policy of compensation which underlies the theory of recovery in all tort actions. Application of the Massachusetts statute would frustrate Vermont's compensatory policy in cases involving injuries to its residents and would not further the policy of deterring wrongdoing. Although its application may further a concomitant Massachusetts policy of protecting citizens from excessive liability, Delta is not a resident of Massachusetts. Its connection with Massachusetts is no more substantial than its connection with Vermont.

The interest of each state in the application of its own law is an important consideration. Vermont has a strong interest in assuring that next of kin are fully compensated for the tortious deaths of residents. On the other hand it is difficult to identify any interest of Massachusetts to be furthered by application of the punitive death statute which it repealed shortly after the crash and replaced with a compensatory wrongful death act which does not limit damages. Mass.Gen.Laws Ch. 229, § 2 (1974).

The consideration of judicial administration is a neutral one since the conflicting laws are statutory rules and neither is difficult to apply. Because Massachusetts' current policy with respect to theory and amount of recovery in wrongful death actions parallels that of Vermont, consideration of the needs of the interstate systems points to application of Vermont law.

In summary, Massachusetts' sole contact with this litigation is the happenstance that the accident occurred there. This contact alone is insufficient to support application of the damages provision of its statute to cases in which both parties are nonresidents, especially since now under Massachusetts law the right to recover for wrongful death is not created by the statute. *Gaudette v. Webb,* 362 Mass. 60, 284 N.E.2d 222. *Cf. Kilberg v. Northeast Airlines, Inc.,* 9 N.Y. 2d 34, 211 N.Y.S.2d 33, 172 N.E.2d 526 (1961). No relevant choice-influencing consideration points to the application of the now repealed Massachusetts law to the damages issue. In contrast, Vermont, residence of most plaintiffs and all of their decedents and the place where the relationship between the parties was centered, has a direct and substantial interest in the application of its law to the issue of damages. It is clearly the state which has the most significant relationship to the parties and to the occurrence with respect to this issue.

Accordingly, in those cases originally filed in the District of Vermont, Delta's motions to dismiss the complaints to the extent they seek damages in excess of two hundred thousand dollars are denied.

### 2. *New Hampshire*

The basis of Delta's motions to dismiss in those cases originally filed in New Hampshire is its contention that under the whole law of New Hampshire the Massachusetts Wrongful Death Statute controls these actions. In response, the plaintiffs assert that the New Hampshire Wrongful Death Statute, which imposes no limitation on damages when a decedent is survived by a dependent, controls in these actions.[9] New Hampshire law, including its choice of law rules, governs the disposition of these motions. *Klaxon, supra.*

Delta argues that New Hampshire adheres to the *lex loci delicti* rule and therefore would apply the law of Massachusetts, the place of injury. However, as plaintiffs point out, the Supreme Court of New Hampshire in *Clark v. Clark,* 107 N.H. 351, 222 A.2d 205 (1966), expressly abandoned the *lex loci delicti* rule and held that choice of law in each case is to be based on an analysis of five relevant considerations, namely (1) predictability of results; (2) the maintenance of reasonable orderliness and good relationships among states in the federal system; (3) simplification of the judicial task; (4) advancement of the forum-state's governmental interests; and (5) the sounder rule of law. 107 N.H. 354–55, 222 A.2d at 208–209.[10] "Generally the law of the State which has the more substantial connection with the total facts and with the particular issue being litigated will govern." *Schneider v. Schneider,* 110 N.H. 70, 71, 260 A.2d 97, 98 (1969).

In each of these actions instituted in New Hampshire the relevant facts for the purposes of this motion are as follows. With one exception, plaintiffs are citizens and residents of the State of New Hampshire, as were all of their decedents at the time of their deaths. Defendant Delta is a corporation organized under the laws of Delaware with its principal place of business in the State of Georgia. Delta does business and solicits passengers in both Massachusetts and New Hampshire. All of plaintiffs' decedents bought their tickets in New Hampshire, for a trip from Manchester directly to New York City; and all expected to return to New Hampshire. The airplane crashed in Massachusetts.

Applying the five choice-influencing considerations enunciated in *Clark* to these facts I find that the law which applies to the issue of damages in these cases is that of New Hampshire.

In *Clark* the court indicated that the weight to be given each consideration depends upon its relevance to the type of case. The factor of predictability of result is to be accorded little weight in cases like the instant one where the transaction giving rise to the issue is unplanned, i. e., neither party acted in reliance that a particular law would govern this issue. In addition, because these cases were transferred from the federal district court in New Hampshire pursuant to 28 U.S.C.A. § 1407 and this court is therefore obliged to apply the law of New Hampshire, the factor of simplification of the judicial task is not a consideration in a Section 1407 transferred case.

With respect to the second factor, maintenance of reasonable orderliness

---

9. N.H.Rev.Stat.Ann. § 556.13 provides in pertinent part:
   The damages recoverable in such an action shall not exceed fifty thousand dollars except in cases where the plaintiff's decedent has left either a widow, widower, child, father, mother, or any relative dependent on the plaintiff's decedent in which event there shall be no limitation. . . .

10. Subsequent cases in which the New Hampshire Supreme Court has used this analysis to determine choice of law include: *Maguire v. Exeter & Hampton Elec. Co.,* 325 A.2d 778 (N.H.1974); *Taylor v. Bullock,* 111 N.H. 214, 279 A.2d 585 (1971); *Schneider v. Schneider,* 110 N.H. 70, 260 A.2d 97 (1969); *Doiron v. Doiron,* 109 N.H. 1, 241 A.2d 372 (1968). See *Buck v. Roger Garland and Son Construction Co.,* Civil Action No. 72–20 (N.H. Sept. 14, 1973).

and good relationships among the states in our federal system, the Court in *Clark* stated: "In terms of interstate . . . accident litigation . . . no more is called for under this head than that a court apply the law of no state which does not have a substantial connection with the total facts and with the particular issue being litigated." 107 N.H. 351, 354, 222 A.2d at 208. The substantiality of New Hampshire's connection with the issue of damages recoverable for the deaths of its own residents is obvious. The interests of Massachusetts in damages recoverable for the deaths of nonresidents seem to be limited to its interest in deterring wrongful conduct within its borders and in limiting the liability incurred by defendants doing business in the state, both of which interests I rule are materially and substantially less than that of New Hampshire in adequately providing for survivors of its own resident decedents.

The remaining two factors also point to the application of New Hampshire law. The advancement of the forum-state's governmental interests is an important consideration. New Hampshire's interest in the present issue is twofold. Its primary interest arising from its role as *parens patriae* is to assure that the decedents' dependents are fully compensated for losses occasioned by tortious conduct. This interest is particularly compelling in view of the fact that resident dependents who are not adequately compensated might find it necessary to look to the state for support. To a much lesser extent New Hampshire's governmental interest lies in imposing liability calculated to deter future tortious conduct upon her residents. Analysis of the two statutes reveals that New Hampshire's governmental interest will be best served in these cases by application of her own statute. The New Hampshire statute is basically compensatory. There is no limitation on damages recoverable by plaintiffs whose decedents leave dependents. See *Buck v. Roger L. Garland*

*and Son Construction Co.*, Civ.Action No. 72–20 (D.N.H. Sept. 14, 1973).

The Massachusetts statute in effect at the time of the crash was, in contrast, punitive. It provided for a two hundred thousand ($200,000) dollar ceiling on damages in every case and that damages are "to be assessed with reference to the degree of . . . culpability." It sought to effectuate two policies: (1) to protect its citizens from excessive liability; and (2) to regulate conduct by imposing liability in proportion to fault. See *Tiernan v. Westext Transport Inc.*, 295 F.Supp. 1256 (D.R.I.1969).

Since Delta conducts substantial and continuous business in New Hampshire, New Hampshire has an interest equal to that of Massachusetts in protecting that corporation from excessive liability. However, this interest is clearly outweighed by its interest in securing full compensation for its decedents' dependents.

To the extent that *Clark* might require consideration of the advancement of the governmental interests of Massachusetts, which, as the place of injury, has a not insubstantial connection with this litigation, the fact that Massachusetts has repealed the punitive death statute in effect at the time of the crash and enacted a compensatory statute which contains no limitation on damages, Mass.Gen.Laws ch. 229, § 2 (1974), establishes that no interest of Massachusetts will be frustrated by application of the compensatory New Hampshire statute.

With respect to the final consideration, as between the Massachusetts punitive statute and the New Hampshire statute, the New Hampshire statute is a better rule of law. These wrongful death actions are actions in tort for negligence. The New Hampshire statute more closely conforms with the policy of compensation which underlies the theory of damages in all tort actions. See *Buck, supra. Cf. Maguire v. Exeter & Hampton Elec. Co.*, 325 A.2d 778 (N.H.1974).

Accordingly, it is ordered that Delta's motions to dismiss these complaints to the extent that they seek damages in excess of two hundred thousand ($200,000) dollars are denied.

### 3. Massachusetts

These actions for wrongful death were filed initially in this Court by plaintiffs who are respectively citizens and residents of the Commonwealth of Virginia and the States of Kentucky and New Hampshire, as were their respective decedents at the time of their deaths.

The basis of Delta's motions to dismiss these complaints to the extent damages in excess of two hundred thousand dollars are sought is its contention that the applicable law is that of Massachusetts.

Under *Erie*, this Court is bound to apply the law of Massachusetts, including its choice of law rules. *Klaxon,*

*supra.* Massachusetts adheres to the traditional *lex loci delicti* choice of law rule in tort cases so that all substantive aspects of a cause of action are governed by the law of the place where the injury occurred. *Brogie v. Vogel,* 348 Mass. 619, 205 N.E.2d 234 (1965); *Trudel v. Gagne,* 328 Mass. 464, 104 N.E.2d 489 (1952); *Burke v. Lappin,* 299 N.E.2d 729 (Mass.App.1973). See *Doody v. John Sexton & Co.,* 411 F.2d 1119 (1 Cir. 1969).[11] Therefore, these actions for wrongful death are governed by the Massachusetts Wrongful Death Statute in effect at the time of the crash including the limitation on damages.[12]

Plaintiffs contend that the Massachusetts courts would not adhere to the above analysis in these cases. Making novel use of the "false conflicts" doctrine,[13] plaintiffs argue as follows:

1. Massachusetts has no interest in the application of its abrogated ceiling on damages in a multi-

11. In 1971, this Court relying upon *Hudyka v. Interstate Tire & Brake Stores, Inc.,* 360 Mass. 102, 271 N.E.2d 617, expressed the opinion that the Massachusetts courts would apply § 145 of the Restatement Second to determine applicable law in tort actions. *Tessier v. State Farm Mutual Ins. Co.,* 334 F.Supp. 807 (D.Mass.1971). There is no recent opinion of the Supreme Judicial Court dealing with this issue; however, the Massachusetts Court of Appeals has recently applied the *lex loci delicti* choice of law rule in tort actions and we defer to that court's statement of current Massachusetts law. See *Burke, supra.*

12. The recognition by the Supreme Judicial Court in *Gaudette v. Webb,* 362 Mass. 60, 284 N.E.2d 222, of the existence of a common law cause of action for wrongful death does not affect application of the damages limitation of the Statute to these actions. In *Gaudette* the Court described the relationship of the death statute to the newly recognized common law right as follows:

"[O]ur wrongful death statutes will no longer be regarded as 'creating the right' to recovery for wrongful death. They will be viewed rather as: (a) requiring that damages recoverable for wrongful death be based upon the degree of the defendant's culpability; (b) prescribing the range of damages recoverable against each defendant; . . . ."

362 Mass. at pp. 1140–41, 284 N.E.2d at 229.

13. The "false conflicts" theory as propounded by Professor Brainerd Currie requires a court faced with a situation in which the laws of two different states are arguably applicable to make a twofold finding: (1) is more than one state interested in the outcome of the pending suit; and (2) given several interested states, is there a conflict. "False conflicts" constitute those cases where there is determined to be no "true conflict" either because only one state is found to be interested in the application of its law or because the laws of several interested states are found to be compatible. Comment, *False Conflicts,* 55 Calif.L.Rev. 74 (1967).

The cases relied on by plaintiffs in support of their contention that Massachusetts recognizes the doctrine of false conflicts are inapposite. *Milliken v. Pratt,* 125 Mass. 374 (1878), involves an application of the traditional rule that a contract, valid where made, will be enforced provided its enforcement does not contravene the public policy of the enforcing state. In *Graves v. Johnson,* 156 Mass. 211, 30 N.E. 818 (1892), the Supreme Judicial Court held that a contract made in Massachusetts which had as its purpose breach of another state's law was void and unenforceable under the law of Massachusetts.

state tort case involving nonresidents.

2. Therefore, there is no "true" conflict or choice of law problem and no basis for applying the law of the place of the injury; and

3. The Court may allow an unlimited amount of recovery . . . for actual damages sustained.

Plaintiffs' argument is specious Even if the Massachusetts choice of law rules permitted this Court to employ a governmental interest analysis test to determine whether a "true conflict" exists,[14] plaintiffs have not urged application of the law of any state other than Massachusetts. They do not identify the source of the law they seek to have applied. Absent an assertion by either plaintiffs or defendant that the law of a state other than Massachusetts controls this issue, *no* choice of law question is presented and *ipso facto* Massachusetts law governs.

It is evident that the real "conflict" to which plaintiffs address themselves is the difference between the Massachusetts statute in effect at the time of the crash which is punitive and limits damages and the Massachusetts statute which became effective on January 1, 1974[15] which is compensatory and does not limit damages. Mass.Gen.Laws ch. 229, § 2 (1974). However, this difference as to theory and amount of recovery does not constitute a legal conflict—the statutes do not apply and can-

not be applied to the same transactions. In substance plaintiffs ask this court to alter the effective date of the current Massachusetts legislation. The court is no more free to do so than the Supreme Judicial Court of Massachusetts.

Accordingly, Delta's motions to dismiss so much of these claims as seek damages in excess of two hundred thousand dollars per decedent are allowed.

### 4. *Florida*

These actions for wrongful death were commenced in the United States District Courts for the Middle and Southern Districts of Florida, thus this Court must apply the law of Florida, including its choice of law rules. *Klaxon, supra.*

Plaintiffs' decedents were residents of Florida. The complaints allege causes of action in tort for negligence and in contract for breach of contract of safe carriage. In each of its answers defendant Delta interposed the following affirmative defense:

"The liability of Defendant Delta . . ., if any, is limited to a sum not in excess of Two Hundred Thousand Dollars ($200,000) in accordance with the laws of the Commonwealth of Massachusetts applicable hereto."

Plaintiffs move to strike this defense on three grounds. They assert that the Florida Supreme Court would refuse to apply the Massachusetts Wrongful

---

14. Under the traditional choice of law approach which is the law of Massachusetts, the question of whether a conflict exists is not asked. The existence of a conflict is presumed whenever there are multistate contacts and the applicable laws are different. Employment of a governmental interest approach by a federal court to determine initially whether a conflict actually exists may be useful as a technique for avoiding undesirable results which a straightforward application of the forum state's traditional conflicts rule would produce. See *Lester v. Aetna Life Ins. Co.*, 433 F.2d 884 (5 Cir. 1970), *cert. den.*, 402 U.S. 909, 91 S.Ct. 1382, 28 L.Ed.2d 650. However, use of this approach by a federal court sitting in diversity is clearly inconsistent with *Erie* and its progeny which require federal courts to apply the substantive law of the forum state to achieve uniformity of result. "It is not for the federal courts to thwart . . . local policies by enforcing an independent 'general law' of conflict of laws." *Klaxon*, 313 U.S. at 496, 61 S.Ct. at 1022.

15. 1973 Mass.Stat., ch. 699, § 2 provides: "This act shall take effect on January first, nineteen hundred and seventy-four, and shall apply to causes of action arising on or after said date." See Comment—1973 to Mass.Gen.Laws ch. 229, § 2 (Supp. 1975).

Death Statute's limitation on damages in these cases because that limitation is against the public policy of Florida as declared by the Florida Legislature. As to the counts in contract, they contend that under the Florida choice of law rules the applicable law is that of Florida, the place where the contracts were made, and, therefore, the limitation on damages contained in the Massachusetts statute does not apply to the cause of action in contract. Lastly, they assert that the *lex loci delicti* choice of law rule in tort would not be followed by the Florida Supreme Court in these cases, that that court would adopt the Restatement 2d approach and would apply Florida law to the issue of damages because that state has the most significant relationship to that issue.

In support of their contention that the Florida courts would refuse to grant comity to the Massachusetts limitation on damages, plaintiffs rely upon the recent case of *Gillen v. United Services Automobile Ass'n*, 300 So.2d 3 (Fla. 1974) and upon recent amendments to the Florida Wrongful Death Act, Fla. Stat.Ann. § 768.16 *et seq.* (Supp.1975). Defendant contrariwise argues that the Florida Supreme Court specifically held in *Hopkins v. Lockheed Aircraft Corp.*, 201 So.2d 743, 749 (Fla.1967), on petition for rehearing, that a limitation on damages contained in an applicable foreign statute is not repugnant to the public policy of Florida.

In *Gillen, supra,* the issue presented was whether the law of New Hampshire which enforces "other insurance" clauses or that of Florida which refuses to enforce such clauses governed. The insurance policies containing the clause in question had been delivered to the insureds in New Hampshire before they moved to Florida. The cars were garaged in Florida at the time of the accident giving rise to the dispute and appropriate notice of the move had been given to the insurance company. The defendant insurance company argued that the law of New Hampshire, the

locus of the contract, governed whereas plaintiff urged the court to apply the Restatement 2d approach which requires application of the law having the most significant relationship to the transaction. The Court stated:

> "This Court has never adopted [the "significant contacts"] test, although consideration has been given to the subject. *Hopkins v. Lockheed Aircraft Corporation*, 201 So.2d 743 (Fla. 1967). Nor do we now deem it necessary *to adopt or reject* it, for . . . such a determination is unnecessary to the resolution of this cause." 300 So.2d at 6 (Emphasis added.)

The Florida Supreme Court did analyze the relative interests of each state in the issue presented. It did so, however, within the framework of the principles of comity, and held that "Public policy requires this Court to assert Florida's paramount interest in protecting its own from inequitable insurance arrangements." Id. at 7.

The issues raised by this motion are identical to those presented to the Florida Supreme Court in *Gillen;* namely, (1) whether Florida will adopt the Restatement Second approach to choice of law; and (2) whether the Florida courts will refuse to grant comity to a potentially applicable foreign law on the ground that it contravenes the public policy of Florida. Although it appears to this Court that it would be more logical to consider the choice of law issue first since technically no issue of comity is presented until it has been determined that a foreign law does in fact apply to a transaction, it is appropriate under *Erie* that we follow the analysis of the Court in *Gillen* and not reach the choice of law issue left open by the Florida Supreme Court in that case unless necessary to the resolution of this case. As we read *Gillen,* it requires this Court to determine the public policy of each state with respect to a limitation on damages recoverable for wrongful death and to evaluate the reasons behind that policy. A prerequi-

site for the grant of comity in a case in which the policies of the two states are incompatible is "a significant interest of the foreign state in the issue to be adjudicated." 300 So.2d 7.

Defendant Delta asserts that these cases are controlled by *Hopkins v. Lockheed Aircraft Corp.,* supra. In *Hopkins* it was held that the Illinois death statute governed damages recoverable for the wrongful death of a Florida resident in an aircraft crash in Illinois. The Florida Supreme Court initially, in a 5–2 decision, abandoned the *lex loci delicti* rule and held that it would not apply the Illinois limitation on damages, although the accident occurred in Illinois. On rehearing, the Court, in express disagreement with the New York Court of Appeals in *Kilberg v. Northeast Airlines, Inc.,* 9 N.Y.2d 34, 211 N.Y.S.2d 133, 172 N.E.2d 526 (1961), held, by a 4–3 vote, that the provision of the Illinois Wrongful Death Act which created a cause of action for wrongful death was not severable from another provision of that Act which placed a limitation on the maximum amount recoverable under that Act for the cause of action so created. They further stated: "We are unable to find . . . an overriding collision with public policy simply because the statute governing actions for death occurring in this state contains no damage limitation." 201 So.2d at 751.

■ I rule that *Hopkins* does not control the instant cases and that the Florida Supreme Court would refuse to grant comity to the Massachusetts damages limitation and would apply the unlimited damages provision of the Florida death statute to these actions for the following reasons. First, under Massachusetts law plaintiffs have a cause of action for wrongful death independent of the Massachusetts death statute. In *Gaudette v. Webb,* 362 Mass. 60, 284 N.E.2d 222 (1972), the Supreme Judicial Court in holding that the right to recover for wrongful death is of common law origin specifically

stated: "Consequently, our wrongful death statutes will no longer be regarded as 'creating the right' to recovery for wrongful death." Id. at ——, 284 N.E.2d at 229. Therefore, it appears that the present case is distinguishable from *Hopkins* on an issue, the severability of the right of action from the limitation on damages, which at least one of the bare majority in that case deemed controlling. See *Hopkins,* 201 So.2d at 752. (concurring opinion of Thornal, J.).

More importantly, in 1972 the Florida legislature enacted a revised Wrongful Death Act. At the time of the *Hopkins* decision, the operation of the Florida death statute was specifically limited to deaths "in this state." In revising the statute the Legislature deleted the words "in this state." Consequently, the operation of the damages. provision of the Florida statute is no longer limited to in-state deaths. Fla.Stat.Ann. § 768.19.

Lastly, in revising the death act, the Florida legislature added § 768.17 entitled "Legislative Intent" which provides in pertinent part: "It is the public policy of this state to shift the losses resulting when wrongful death occurs from the survivors of the decedent to the wrongdoer. . . ." In contrast, the policy underlying the former Massachusetts death statute is to protect citizen defendants from excessive liability and to regulate conduct by assessing damages solely on the basis of culpability. See *Tiernen v. Westext Transport, Inc.,* 295 F.Supp. 1256 (D.R.I.1969).

It is clear that this punitive policy and the absolute limit on damages contravene the public policy of Florida as declared by its Legislature in section 768.17. It is also clear to this Court that the Florida Supreme Court, which in *Gillen* states that "a prerequisite" for the application of comity is a significant interest of the foreign state in the issue to be adjudicated, would conclude, as we do, that Massachusetts has no present interest in the application of its former death statute to limit the damages recoverable by nonresident

plaintiffs from a nonresident defendant in light of the fact that Massachusetts has recently adopted a compensatory death statute with an unlimited damages provision. Mass.Gen.Laws ch. 229, § 2 (1974). Florida, on the other hand, has a paramount interest in protecting its residents' economic health and in providing that the losses caused by tortious conduct be borne by the wrongdoer.

I rule that the Supreme Court of Florida would find enforcement of the punitive Massachusetts damages provision obnoxious to Florida public policy and would hold that these cases are therefore inappropriate for the application of comity principles. *Gillen, supra;* see *Manpower Franchises, Inc. v. Wilkinson,* No. 74–198 (M.D.Fla. Sept. 23, 1974), where a federal district court refused to enforce an agreement not to compete on the ground that it was obnoxious to Florida public policy even though the clause was valid in Wisconsin and the parties had agreed that their contract would be governed by Wisconsin law.

Furthermore, the law applicable to the issue of damages in these cases is the Florida Wrongful Death Act which contains no limitation on damages and which is not restricted to death occurring in Florida. Florida's connection with these cases is clearly substantial enough to support application of its own law. *Scott v. Eastern Airlines, Inc.,* 399 F.2d 14 (3 Cir. 1968), *cert. den.,* 393 U.S. 979, 89 S.Ct. 446, 21 L.Ed.2d 439. Resolution of the choice of law issues raised by plaintiffs' remaining contentions is therefore unnecessary and would be particularly inappropriate in view of the refusal of the Florida Supreme Court to reach the choice of law issue in *Gillen.*

Plaintiffs' motion to strike the affirmative defense set forth in paragraph 22 of the answers are granted.

## 5. *New York*

The New York cases, unlike the other cases discussed above, were transferred to this Court not only by the Multidistrict Litigation Panel under 28 U.S.C. § 1407, but also were transferred to this Court pursuant to section 1404(a) of the Judicial Code, 28 U.S.C.A. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

They are before the Court on defendant's motions to dismiss plaintiffs' complaints to the extent that they seek damages in excess of two hundred thousand ($200,000) dollars on the ground that they are controlled by the Massachusetts Wrongful Death Act which limits damages recoverable for wrongful death to that amount.

The issue presented by these motions —whether the *forum non conveniens* rules of the transferor jurisdiction (N.Y.) should affect the law applied after a section 1404(a) transfer—appears to be one of the first impression.[16] In *Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964), the Supreme Court considered the question of choice of law rules applicable in a transferred case and held that the transferee court shall apply the rules which the transferor court would have been bound to apply. However, the Court expressly limited its holding to the facts of *Van Dusen,* which involved a transfer requested by a defendant in a case where it was not asserted that the state courts of the transferor jurisdiction would have

---

16. Although no case has been found in which this issue was considered, it has received the consideration of commentators. See, e. g., Note, *Erie, Forum Non Conveniens and Choice of Law in Diversity Cases,* 53 Va.L. Rev. 380 (1967) ; Note, *Choice of Law After Transfer of Venue,* 75 Yale L.J. 90 (1965) ; B. Currie, *Change of Venue and the Conflict of Laws: A Retraction,* 27 U.Chi. L.Rev. 341 (1960) ; B. Currie, *Change of Venue and the Conflict of Laws,* 22 U.Chi.L. Rev. 405 (1955).

dismissed the action on *forum non conveniens* grounds, stating:

"[W]e do not and need not consider whether in all cases § 1404(a) would require the application of the law of the transferor, as opposed to the transferee, State. We do not attempt to determine whether, for example, the same considerations would govern if a plaintiff sought transfer under § 1404(a) or if it was contended that the transferor State would simply have dismissed the action on the ground of *forum non conveniens*." 376 U.S. at 639–40, 84 S.Ct. at 821.

The basis of Delta's motions to dismiss is its assertion that the instant cases would have been dismissed on *forum non conveniens* grounds had they been brought in the New York state courts. One of these cases, *D'Arcy v. Delta Airlines, Inc.*, was originally commenced in the New York Supreme Court, New York County, and was in fact, dismissed on *forum non conveniens* grounds; the dismissal was affirmed by the Appellate Division of the Supreme Court of New York (*D'Arcy v. Delta Air Lines, Inc.*, Affirmance of Order No. 1685, Jan. 23, 1975) and plaintiff's motion for leave to appeal has been denied by the New York Court of Appeals (*D'Arcy v. Delta Air Lines, Inc.*, Mo. No. 166, March 19, 1975). For purposes of this memorandum it will be assumed, as Delta asserts, that all of these actions would have been dismissed on *forum non conveniens* grounds if brought in the New York state courts. This assumption is justified by a comparison of the files in these cases which reveals that the *D'Arcy* case has more connection with the State of New York than any of the other cases. Although the discretionary nature of the doctrine precludes absolute certainty, this Court has no doubt that all of these cases would have been dismissed on *forum non conveniens* grounds by the New York courts.

In support of its motion Delta relies on *Erie R. R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Delta does not assert, however, that *Erie* requires conformity by the New York Federal Court with the result which would have obtained in the state courts in these cases, i. e. dismissal. Nor does Delta contend that, had transfer to Massachusetts been denied by the New York court, the New York federal judge would not have been free to apply New York choice of law rules in these cases. See *Parsons v. Chesapeake & Ohio Ry. Co.*, 375 U.S. 71, 84 S.Ct. 185, 11 L.Ed.2d 137 (1963). Such a contention would be untenable in view of Congress' enactment of 28 U.S.C.A. § 1404. *Willis v. Weil Pump Co.*, 222 F.2d 261 (2 Cir. 1955); *Lapides v. Doner*, 248 F.Supp. 883 (E.D.Mich.1965). See *Parsons, supra*. Rather, Delta contends that because these actions do not fall within what it characterizes as the "narrow exception to the *Erie* doctrine" carved out by the Supreme Court in *Van Dusen, supra*, this Court, a federal court sitting in diversity, is required to apply the law of Massachusetts, the forum state. This analysis is overly simplistic. The *Erie* doctrine is not a mechanical rule. The Supreme Court in *Van Dusen* noted that the goal of *Erie* is uniformity between federal and state courts and that "*in most instances* this could be achieved by directing federal courts to apply the laws of the states 'in which [the federal courts] sit.'" 376 U.S. at 638–39, 84 S.Ct. at 820. (Emphasis added.) Applying the *Erie* doctrine to the facts in *Van Dusen* the Court observed, "[W]e should ensure that the 'accident' of federal diversity jurisdiction does not enable a party to utilize a transfer to achieve a result in federal court which could not have been achieved in the courts of the State where the action was filed." 376 U.S. at 638, 84 S.Ct. at 820, and concluded that application of the state law which would have been applied had there been no change of venue accorded with the *Erie* policy.

The *Erie* analysis cannot, however, provide a solution to the *forum non*

*conveniens* problem. Uniformity of result between the State and Federal courts in the transferor jurisdiction is precluded whenever a federal court transfers an action which the state court would have dismissed. The Supreme Court in *Van Dusen* established that the law to be applied after transfer is that of either the transferor or transferee jurisdiction.[17] In contrast to this narrow choice, after dismissal on *forum non conveniens* grounds plaintiff may again select a forum and exercise his venue choice so as to benefit from state law which appears favorable to him. An assumption that a plaintiff, after dismissal, would choose to bring his action in the transferee forum is plainly unjustified in any case in which another more favorable forum is open to him.

The following variation upon the present factual situation further illustrates the unworkability of the *Erie* analysis in this context. It is established that "a prior state court dismissal on the ground of *forum non conveniens* can *never* serve to divest a federal district judge of the discretionary power" to rule on a section 1404(a) transfer. *Parsons*, 375 U.S. at 73–74, 84 S.Ct. at 187. (Emphasis added.) There will be diversity cases, therefore, in which the district court denies a transfer although the state court would have dismissed on *forum non conveniens* grounds. In such cases, absent independent federal choice of law rules, precluded by *Klaxon v. Stentor Elec. Co., Inc.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), the district court has no alternative but to apply the law of the original forum because there *is* no transferee forum in such a case.

Although the Supreme Court in *Van Dusen* found support in the *Erie* doctrine for its conclusion that no change of law accompanied transfer on the facts of that case, the primary consideration relied on by the Court was the legislative purpose of the transfer statute and the effect that a change of law after transfer would have upon the operation of the statute. The Court also acknowledged that it is a prerogative of plaintiffs to exercise the venue privilege so as to benefit from favorable state laws. The Court concluded:

> [The] legislative background supports the view that § 1404(a) was not designed to narrow the plaintiff's venue privilege or to defeat the state-law advantages that might accrue from the exercise of this venue privilege but rather the provision was simply to counteract the inconveniences that flowed from the venue statutes by permitting transfer to a convenient federal court. . . . We believe, therefore, that both the history and purposes of § 1404(a) indicate that it should be regarded as a federal judicial housekeeping measure, dealing with the placement of litigation in the federal courts and generally intended, on the basis of convenience and fairness, simply to authorize a change of courtrooms. 376 U.S. at 635–37, 84 S.Ct. at 819.

Analysis of the effect that conditioning choice of law after transfer on the *forum non conveniens* rules of the transferor forum would have on the operation of the transfer statute is determinative of the issue presented. "The principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of the general venue statute." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947). The doctrine leaves much to the discretion of the court and in ruling on motions to dismiss courts may consider factors of both private and public interest, including considerations relative to the expense and practical difficulties

---

17. "We do not and need not consider whether in all cases § 1404(a) would require the application of the law[s] of the transferor, as opposed to the transferee, State." 376 U.S. at 639, 84 S.Ct. at 821.

engendered by trial in an inconvenient forum and matters relating to the administration of the court. Id. at 508–09, 67 S.Ct. 839. Engrafting upon section 1404(a) a rule which would make applicable law after transfer depend on whether the state courts of the transferor jurisdiction would have dismissed the action on *forum non conveniens* grounds would only engender litigation and force federal courts to make a determination which, because of the nature of the factors considered, can only properly be made by the local court: certainty and predictability would be precluded.[18] I rule that the *forum non conveniens* rules of the transferor forum do not affect choice of law after transfer and the applicable law is the whole law of the transferor forum.

This conclusion is not entirely satisfactory. As defendant points out it encourages abuse of the venue laws by plaintiffs in search of laws favorable to their causes who, in many cases, can be reasonably sure that the defendant will seek transfer, thereby sparing them the expense of trial in an inconvenient forum. The Court does not believe, however, as defendant asserts, that any public policy of the state of New York is offended by this ruling. The very cases relied on by defendant to show the existence of a substantive policy of New York state to discourage recourse to its courts by forum-shopping plaintiffs establish that the focus of this policy is on the effect that such forum-shopping has upon its state judicial system. See, e. g., *Silver v. Great American Ins. Co.*, 29 N.Y.2d 356, 328

N.Y.S.2d 398, 278 N.E.2d 619 (1971); *Williams v. Seaboard Airlines R. R. Co.*, 9 A.D. 268, 193 N.Y.S.2d 588 (1959).

An unavoidable consequence of this ruling may well be forum-shopping by plaintiffs; however, this forum-shopping will be confined to federal courts. No legitimate interest of New York State is impinged upon; abuse of federal venue laws is a matter of federal concern.[19] Deterrence of forum-shopping by plaintiffs should not be achieved at the expense of the smooth operation of the transfer statute.

I rule that the *forum non conveniens* rules of the transferor forum do not affect applicable law after transfer and that these cases are controlled by New York choice of law rules.

■ Under New York's choice of law rules, the law applicable to the theory and amount of damages recoverable for wrongful death is that of the domiciles of the decedents and their beneficiaries. *Thomas v. United Airlines, Inc.*, 24 N.Y.2d 714, 301 N.Y.S.2d 973, 979, 249 N.E.2d 755, 759–60 (1969), *cert. den.* 396 U.S. 991, 90 S.Ct. 484, 24 L.Ed.2d 453; *Long v. Pan American World Airlines, Inc.*, 16 N.Y.2d 337, 266 N.Y.S.2d 513, 213 N.E.2d 796 (1965); *Kilberg v. Northeast Airlines*, 9 N.Y.2d 34, 211 N.Y.S.2d 133, 172 N.E.2d 526 (1961). Because the wrongful death statutes of Connecticut,[20] Maryland,[21] and Vermont,[22] domiciles of decedents and their surviving spouses and children, do not limit damages recoverable by plaintiffs in the circumstances of these cases, defendants' motions to dismiss are denied.

18. In contrast, a rule that the law of the transferee forum controls an action transferred on the plaintiff's motion will not engender litigation. The courts which have considered the issue have held that the law of the transferee forum governs such actions. See *Carson v. U-Haul Co.*, 307 F.Supp. 1086 (E.D.Ky.1969); *Les Schwimley, Inc. v. Chrysler Motors Corp.*, 270 F.Supp. 418 (E.D.Cal.1967).

19. The American Law Institute's Study of the Division of Jurisdiction between State and Federal Courts (Proposed Final Draft No. 1) does not appear to have considered the specific issue raised by these cases. See proposed § 1306(c). However, enactment of the A.L.I.'s proposed revision of the federal venue statute would, in large part, make the question academic. See proposed § 1303.

20. Conn.Gen.Stat. § 52–555 (1975).

21. Md.Code Ann. § 3–904 (Supp.1974).

22. Ver.Stat.Ann.Tit. 14, § 1492(b) (1974).