# In re ARMORED CAR ANTITRUST LITIGATION.

*State of Maryland v. Brink's, Inc., et al.,* D. Maryland, C.A. No. N78–1094.

## No. 318.

Judicial Panel on Multidistrict Litigation.

Dec. 19, 1978.

---

4. See note 3, *supra*.

## OPINION AND ORDER

Before JOHN MINOR WISDOM, Chairman, and EDWARD WEINFELD, EDWIN A. ROBSON, STANLEY A. WIEGEL, ANDREW A. CAFFREY, and ROY W. HARPER, Judges of the Panel.

PER CURIAM.

This litigation was spawned by the indictment of Wells Fargo Armored Services Corporation (Wells Fargo) and Brink's, Inc. (Brink's), and a separate indictment against certain of their present and former officers, for conspiring in violation of the federal antitrust laws to fix prices and to allocate customers with respect to armored car and related services. The indictments and a companion Government civil enforcement action, naming only Brink's and Wells Fargo as defendants, were filed on June 21, 1977, in the Northern District of Georgia.

Subsequently, the Panel, pursuant to 28 U.S.C. § 1407, centralized before the Honorable Richard C. Freeman in the Northern District of Georgia thirteen other antitrust actions brought as class actions against Brink's, Wells Fargo, and/or Purolator, Inc. (Purolator). *In re Armored Car Antitrust Litigation,* 441 F.Supp. 921 (Jud.Pan.Mult. Lit.1977). The litigation has since grown to include sixteen actions.

On April 3, 1978, Judge Freeman conditionally approved a proposed settlement agreement involving fifteen of those sixteen actions.[1] Under the terms of the settlement, Brink's, Wells Fargo and Purolator would contribute $11.8 million to be divided by a class of all purchasers of armored car services from January 1, 1968 to February 21, 1978, excluding the federal government and its agencies, the Federal Reserve Banks, and the settling defendants. Judge Freeman scheduled a hearing on September 18, 1978, for the purposes of deciding, *inter alia,* whether the conditional class should be certified as final and permanent, and whether the proposed settlement is reasonable, adequate and fair. At the September 18th hearing, the court found that the data submitted in support of the settlement was patently insufficient and that considerably more economic data was needed to support the settlement. The hearing was continued until January 8, 1979, and the proponents of the settlement were given an opportunity to provide further data.[2]

Pretrial proceedings in all actions in the transferee district, except proceedings relating to the proposed settlement, have been stayed pending the court's approval or rejection of the proposed settlement.

The above-captioned action (*Maryland*) was brought against Brink's and Wells Fargo by the State of Maryland on its own behalf and as a class action on behalf of its political subdivisions which have purchased armored car and related services. As in the actions in the transferee district, Brink's and Wells Fargo are charged in *Maryland* with violating the federal antitrust laws in connection with the provision of armored car and related services.

Because *Maryland* appeared to share questions of fact with the actions previously transferred to the Northern District of Georgia, the Panel, pursuant to 28 U.S.C. § 1407 and Rule 9, R.P.J.P.M.L., 65 F.R.D. 253, 259–60 (1975), issued an order conditionally transferring *Maryland* to that district for inclusion in the centralized pro-

---

1. *In re Armored Car Antitrust Litigation,* No. C78–139A (all cases) (N.D.Ga., April 3, 1978) (Settlement Order No. 1).

2. *In re Armored Car Antitrust Litigation,* No. C78–139A (all cases) (N.D.Ga., Sept. 20, 1978) (order continuing settlement hearing).

ceedings pending there. Maryland moves to vacate the conditional transfer order. Brink's and Wells Fargo oppose the motion.

We find that Maryland shares questions of fact with the previously transferred actions and that transfer of *Maryland* to the Northern District of Georgia under Section 1407 will best serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation.

Maryland argues that little meaningful discovery has occurred in the transferee district and that there would be no danger of duplicative discovery, inconsistent rulings or waste of judicial resources if *Maryland* were allowed to remain in the District of Maryland. Maryland also urges that retention of *Maryland* in the District of Maryland is especially appropriate because: 1) the question concerning the authority of the Maryland Attorney General, on behalf of Maryland entities, to opt out of a settlement class, and questions concerning certain defense issues, are matters best suited for resolution by the court in the District of Maryland applying the appropriate federal and Maryland law; 2) much discovery will occur in Maryland on the issues of impact and damages; and 3) the existence of a statewide hiring and travel freeze could affect the ability of Maryland to prosecute its action in the Northern District of Georgia.

We find these arguments unpersuasive. *Maryland* clearly shares with the actions in the transferee district factual questions concerning the existence, scope and effect of the alleged conspiracy. Notwithstanding the proposed settlement proceedings in the Northern District of Georgia, transfer of *Maryland* is necessary to eliminate the potential for duplicative discovery, inconsistent pretrial rulings and waste of judicial resources, especially because the proposed settlement is not applicable to all actions in the transferee district. Furthermore, in the instant matter, it is desirable that a single judge preside over all actions affected by class action proceedings. Judge Freeman is in the best position to determine whether Maryland entities, through the Maryland Attorney General, timely exercised their option to be excluded from the conditionally certified class. *See In re Glenn W. Turner Enterprises Litigation,* 383 F.Supp. 844, 845 (Jud.Pan.Mult.Lit.1974).

Maryland's argument that transfer of *Maryland* should be denied because a Maryland court might be better able to apply Maryland law is similarly unpersuasive. It is within the very nature of coordinated or consolidated pretrial proceedings in multidistrict litigation for the transferee judge to be called upon to apply the law of more than one state. *See, e. g., In re Air Crash Disaster at Boston, Massachusetts on July 31, 1973,* 399 F.Supp. 1106 (D.Mass.1975). Thus Maryland can be assured that Maryland law, if applicable, will be duly applied by the transferee judge.

Finally, while we share Maryland's desire to minimize the overall expenses in this litigation, we are confident that all current parties, and all parties remaining if any settlement is approved, can experience a net savings of time, effort and expense by participation in Section 1407 proceedings in the Northern District of Georgia and by the accompanying utilization of techniques recommended in the *Manual for Complex Litigation.* For example, since all plaintiffs share virtually identical interests concerning the issue of liability, the judicious use of liaison counsel, lead counsel and steering committees could streamline the entire pretrial operation and even eliminate any need for most counsel to travel to the transferee district. *See Manual for Complex Litigation,* Part I, §§ 1.90–1.93 (rev. ed. 1977).

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, the action entitled *State of Maryland v. Brink's, Inc., et al.,* D. Maryland, C.A.No. N78–1094, be, and the same hereby is, transferred to the Northern District of Georgia and, with the consent of that court, assigned to the Honorable Richard C. Freeman for coordinated or consolidated pretrial proceedings with the actions pending there.